[Civ. No. 22615. First Dist., Div. Two. Sept. 20, 1965.]

SCHENLEY INDUSTRIES, INC., et al., Plaintiffs and Appellants, v. RUSSELL S. MUNRO, as Director of the Department of Alcoholic Beverage Control, et al., Defendants and Respondents.

Bronson, Bronson & McKinnon, Willard S. Johnston, B. H. Parkinson, Jr., Peter F. Sloss, Ackerman, Johnston, Johnston & Mathews and Thomas B. Swartz for Plaintiffs and Appellants.

David Rubenstein and Allan, Miller, Groezinger, Keesling & Martin as Amici Curiae on behalf of Plaintiffs and Appellants.

Thomas C. Lynch, Attorney General, Charles A. Barrett, Assistant Attorney General, and Wiley W. Manuel, Deputy Attorney General, for Defendants and Respondents.

AGEE, J.—Plaintiffs, who are engaged in various segments of the liquor industry, appeal from a judgment upholding the validity of rule 100, as adopted by the Department of Alcoholic Beverage Control on December 3, 1958. The rule relates solely to distilled spirits. The challenged portions thereof have been subject to an injunction pendente lite since adoption and have not yet been enforced.

The principal issue on appeal is whether the department has the authority to prohibit quantity sales of distilled spirits (i.e., two or more cases) by manufacturers, rectifiers, and wholesalers to retailers at a discount which would amount to a greater sum than the seller's cost saving resulting from a quantity sale as compared with a single case sale.

An interrelated issue is whether the department has the power to enact a rule of evidence which, in the absence of a showing to the contrary, makes the seller in such a transaction presumptively guilty of violating the law if he allows the retailer a quantity discount of more than 8 per cent of the listed selling price of a single case.

Appellants contend that these enactments constitute an unauthorized assumption of legislative power by an administrative agency.

Prior to being amended in 1958, rule 100 was merely an administrative regulation designed to establish the *mechanics* for the *posting* of wholesale distilled spirits prices required by section 24756 of the Business and Professions Code.[1] The 1958 amendments added, for the first time, provisions regulating the *amount of discount* which may be given on quantity sales of distilled spirits.

The pertinent portions of rule 100 are summarized below. The controversy centers upon subsections (d), (k), (l), (m) and (n).

Subsection (a) provides that each manufacturer, rectifier or wholesaler of distilled spirits shall file with the department a schedule showing the price per case at which distilled spirits will be sold to retailers and the discounts offered to them on quantity sales.

Subsection (c) provides that the price per case as listed on such schedule shall not be less than the cost thereof to such manufacturer, rectifier or wholesaler in violation of the California Unfair Practices Act.[2]

---

[1] All *section* references herein are to the Business and Professions Code unless otherwise noted.

[2] Section 17043 thereof provides as follows: "It is unlawful for any person engaged in business within this State to sell any article or

Subsection (d) provides that the schedule may include quantity discounts for quantities of two or more cases at discounts from the single case price, provided that such quantity discounts *shall not be greater* than the reduction in cost by savings per case to such manufacturer, rectifier or wholesaler as a result of selling and delivering two or more cases of distilled spirits to a retailer as compared with the cost of selling and delivering a single case.

Subsection (e) allows the filing of a quantity discount in excess of the savings specified in subsection (d) if filed to meet a legal quantity discount filed with the department by a competitor.

Subsection (k) provides that if a cost survey has been established in accordance with the provisions of section 17072[3] and accepted by the department, prices and quantity discounts consistent therewith are presumed to be lawful and those inconsistent therewith are presumed to be unlawful.

Subsection (*l*) provides that, if there is no such cost survey, it will be presumed by the department that a quantity discount in excess of 8 per cent of the price per single case is in violation of sections 25503, subdivisions (e) and (f), or 25600 of the Business and Professions Code or subsection (d) of the rule.

Subsection (m) qualifies subsections (k) and (*l*) by providing that a manufacturer, rectifier or wholesaler who proposes to file a quantity discount which would be presumptively unlawful may submit to the department such records of costs and savings as will show that such proposed quantity discount is not in excess of those permitted by subsection (d) above. The department shall thereupon decide whether or not to accept the proposed discount for filing.

Subsection (n) provides that no retailer shall knowingly accept prices or discounts which are contrary to the above provisions.

Thus, while the wholesale price of a single case is fixed by the seller, the *minimum* wholesale price of two or more cases is fixed by the formula prescribed by subsections (d) and

product at less than the cost thereof to such vendor, or to give away any article or product, for the purpose of injuring competitors or destroying competition.''

[3]Section 17072 provides: ''Where a particular trade or industry, of which a person complained against is a member, has an established cost survey for the locality and vicinity in which the offense is committed, that cost survey is competent evidence to be used in proving the costs of such person.''

(*l*). This is obviously price-fixing by the department, despite the fact that the basic figure upon which the computation is made is supplied by the seller.

The Alcoholic Beverage Control Act (ABC Act) (§§ 23000-25762) does not attempt in any way to control the *amount* of the *prices* at which distilled spirits may be sold to retailers. All it does is require that such wholesale prices be *posted* with the department. (Only the prices at which distilled spirits are sold by retailers to *consumers* are subject to *mandatory* fair trade contracts.)

However, as authority for its enactment of rule 100, as amended in 1958, the department cites sections 24756, 24757, 25503, 25600, 25750 and 25752 of the Business and Professions Code, as well as section 22 of article XX of the California Constitution.

Section 24756 requires distilled spirits manufacturers and wholesalers to maintain with the department a price list showing the prices at which distilled spirits are sold to retailers by the licensee and requires all such sales to be in accordance with such posted price lists. (This is the "Price Posting" law pursuant to which the pre-1958 rule 100 was adopted.)

Section 24757 gives the department the power to "adopt such rules as it determines to be necessary for the *administration* of Sections 24754 to 24756, inclusive."[4]

Section 25503, subdivision (b) prohibits a gift of any alcoholic beverages as a part of any sale of alcoholic beverages.

Section 25503, subdivision (e) prohibits willful discrimination in the same trading area "in the price of any brand of distilled spirits sold to different retail licensees purchasing under like terms and conditions."

Section 25503, subdivision (f) prohibits paying, crediting or compensating retailers "for advertising, display, or distribution service in connection with the advertising and sale of distilled spirits."

Section 25600 prohibits the giving of "any premium, gift, or free goods in connection with the sale of any alcoholic beverage."

Section 25750 provides that "The department shall make and prescribe such reasonable rules as may be necessary or proper to carry out the purposes and intent of Section 22 of Article XX of the Constitution and to enable it to exercise the powers and perform the duties conferred upon it by that

---

[4] Italics added unless otherwise indicated.

section or by this division [§§ 23000-25762], not inconsistent with any of the provisions of any statute of this State. . . ."

Section 25752 provides that records shall be kept by the licensee of "all expenditures incurred by the licensee in the manufacture, importation, sale or distribution of alcoholic beverages, except wine, in this State."

The pertinent provisions of section 22, article XX of the state Constitution read as follows: "The Department of Alcoholic Beverage Control shall have the exclusive power, except as herein provided and in accordance with laws enacted by the Legislature, to license the manufacture, importation and sale of alcoholic beverages in this State, and to collect license fees or occupation taxes on account thereof. The department shall have the power, in its discretion, to deny, suspend or revoke any specific alcoholic beverage license if it shall determine for good cause that the granting or continuance of such license would be *contrary to public welfare or morals,* or that a person seeking or holding a license has violated any law prohibiting conduct involving moral turpitude."

The foregoing constitutional power of the department, as contained in the first of the two sentences quoted above, is clearly limited by the proviso that it must be exercised *"in accordance with the laws enacted by the Legislature."*

As stated by Mr. Justice Burke in the recent case of *Harris* v. *Alcoholic Beverage etc. Appeals Board* (1964) 228 Cal.App.2d 1, 6 [39 Cal.Rptr. 192]: "In the absence of valid statutory authority, an administrative agency may not, under the guise of a regulation, substitute its judgment for that of the Legislature. It may not exercise its sublegislative powers to modify, alter or enlarge the provisions of the legislative act which is being administered. . . . *These principles apply even though its rule-making authority derives directly from the Constitution. (Blatz Brewing Co.* v. *Collins,* 69 Cal.App. 2d 639 [160 P.2d 37].)"

The department argues that, independently of the rule-making power conferred upon it by section 25750, its enactment of the price-regulating features of rule 100 is justified and may be supported by the second sentence of the constitutional provision which we have quoted above.

The cases principally relied upon by the department are *Mercurio* v. *Department of Alcoholic etc. Control,* 144 Cal. App.2d 626 [301 P.2d 474], *Moore* v. *State Board of Equal-*

*ization,* 76 Cal.App.2d 758 [174 P.2d 323], and *Weiss* v. *State Board of Equalization,* 40 Cal.2d 772 [256 P.2d 1].

*Mercurio* involves section 25657 of the Business and Professions Code, which prohibits the employment or paying of hostesses or entertainers to procure or encourage the purchase of alcoholic beverages on the licensed premises or to employ or permit anyone to loiter in or about the premises to beg or solicit anyone to purchase any alcoholic beverage for the solicitor.

The department's rule 143 went further than the statute and prohibited the mere *acceptance* by a *female employee* of a licensee of any alcoholic beverage sold on the licensed premises.

The court upheld the validity of the rule, stating that it "was adopted to enable the board to exercise the powers conferred upon it by the Constitution" and that "it requires no argument to prove that permitting women employees of an on-sale liquor premises to accept alcoholic drinks purchased by patrons is *contrary to the public welfare and morals.*" (P. 631.)

In *Moore,* the licensee was convicted in federal court of violating the Emergency Price Control Act. Rule 35 of the board (predecessor of the department) provided for the revocation of a license where the licensee was convicted of such an offense. The court accepted the board's contention that it had the power under the Constitution to enforce the rule "upon a determination that its [the license's] continuance would be contrary to public welfare or morals . . ." (p. 761).

In *Weiss,* the board denied an application for an off-sale beer and wine license because of the proximity of the premises to a school. Such denial was upheld by the Supreme Court on the ground that the board could so act under its constitutional power " 'to deny . . . any specific liquor license if it shall determine for good cause that the granting . . . of such license would be contrary to public welfare or morals.' "

The distinguishing feature of the line of cases exemplified by *Mercurio, Moore* and *Weiss* is that they deal with conduct or conditions which, in the wording of the Constitution, "would be contrary to public welfare or morals."

██ We hold that price-regulating of quantity sales of distilled spirits to retailers does not come within the meaning or purview of "public welfare or morals" as that term is used in article XX, section 22, of our Constitution.

The department calls attention to section 24749, enacted in 1961.[5] The Legislative Counsel was asked for an opinion while the measure was being considered by the Legislature before its passage. The specific question put to him was whether, if adopted, it "would grant authority to the Department of Alcoholic Beverage Control to adopt rules and regulations to control the prices at which distilled spirits are sold by wholesalers to retailers or the discounts which may be permitted in connection with such sales."

The answer of the Legislative Counsel was an unqualified "No." He further stated: "Except for proposed Section 24749, the bill [Assembly Bill No. 315] deals with *retail* sales of distilled spirits[6], and we do not think that section confers any new or additional powers upon the department insofar as *wholesale* prices or discounts are concerned. Thus, in our opinion, Assembly Bill No. 315 would not authorize the department to adopt rules and regulations to control *wholesale* prices and discounts."

While the Legislature has not seen fit to enact any legislation with respect to the *amount* of discount which may be allowed on quantity sales of *distilled spirits,* it has done so with respect to quantity sales of *wine.* Section 24871 contains the following provision: "The total quantity and prompt payment discounts if any, to retailers shall not exceed 10 per cent per case for case lots [of wine]."

In *Blatz Brewing Co.* v. *Collins, supra,* 69 Cal.App.2d 639, the court held invalid a rule of the administrative agency (then the Board of Equalization) which required that an out-of-state manufacturer of beer have a "certificate of compliance" issued by the agency in order to sell its beer in California.

The following language in the opinion is directly applicable herein: "An examination of the A.B.C. [Alcoholic

---

[5]Section 24749 provides as follows: "It is the declared policy of the State that it is necessary to regulate and control the manufacture, sale, and distribution of alcoholic beverages within this State for the purpose of fostering and promoting temperance in their consumption and respect for and obedience to the law. In order to eliminate price wars which unduly stimulate the sale and consumption of alcoholic beverages and disrupt the orderly sale and distribution thereof, it is hereby declared as the policy of this State that the sale of alcoholic beverages should be subjected to certain restrictions and regulations. The necessity for the enactment of provisions of this chapter is, therefore, declared as a matter of legislative determination."

[6]In addition to adding section 24749, the bill proposed to add section 24750.5, repeal the old and add a new section 24755, and amend section 24757.

Beverage Control] Act shows that the Legislature very comprehensively covered the entire field of alcoholic beverage control and licensing. . . . The Legislature in framing the act did not see fit to provide a license for out-of-state manufacturers. . . . The board by rule 55 does attempt to do this . . . [pp. 644-645]. . . . Applying the test of the decision in that case [*American Distilling Co.* v. *State Board of Equalization,* 55 Cal.App.2d 799 [131 P.2d 609]] to the facts here, we find that the Legislature provided no yardstick for the regulation of out-of-state beer manufacturers in the manner attempted by the board, other than that it obviously appears from the whole act that the Legislature figured that the entire subject was covered or was to be left unregulated. [P. 646.] . . . Certainly in the case at bar, in view of the very extensive scheme of licensing provided by the act, and the silence of the act upon the question of licensing out-of-state beer makers, the adoption by the board of rule 55 was legislating upon a subject with respect to which the law-making body in its wisdom *had seen fit to remain silent.* . . . This is another of those situations frequently met with today in which administrative boards feel called upon not merely to administer the act under which they are created, or to carry on the powers delegated to them, but to assume additional powers. . . ." (Pp. 652-653).

The Legislature has seen fit to remain silent as to the subject of permissible discounts on quantity sales of distilled spirits and it has not delegated the authority to act in this respect to the department.[7] The grant by the Legislature to the department under section 25750 to make "such reasonable rules as may be necessary or proper" does not carry with it such authority. (See comprehensive review and statement of the general principle in 1 Am.Jur.2d, Administrative Law, § 132, pp. 944-946.)

We have concluded that the department did not have the power or authority to enact subsections (d), (k), (l), (m) and (n) of rule 100. The judgment is therefore reversed with directions to the trial court to order the issuance of a permanent injunction consistent with our decision.

Shoemaker, P. J., and Taylor, J., concurred.

---

[7]It is significant that when the Legislature has desired to delegate such authority to an administrative agency or officer it has done so. (Agr. Code, § 4360.)