[L. A. No. 29530. In Bank. Aug. 12, 1968.]

RALPHS GROCERY CO. et al., Plaintiffs and Respondents, v. JAMES O. REIMEL, as Director of the Department of Alcoholic Beverage Control et al., Defendants and Appellants.

Thomas C. Lynch, Attorney General, and Lynn Henry Johnson, Deputy Attorney General, for Defendants and Appellants.

Albert G. Evans as Amicus Curiae on behalf of Defendants and Appellants.

Steck & Marston and Emil Steck, Jr., for Plaintiffs and Respondents.

Miller, Groezinger, Pettit, Evers & Martin and James T. Caleshu as Amici Curiae on behalf of Plaintiffs and Respondents.

TOBRINER, J.—In 1951 the Department of Alcoholic Beverage Control, claiming to act pursuant to authority conferred

upon it by section 22 of article XX of the California Constitution and sections 25006 and 25750 of the Business and Professions Code,[1] promulgated rule 105(a) (Cal. Admin. Code, tit. 4, § 105, subpar. (a)). With minor modifications, this rule has been in effect continuously since 1951 and today reads as follows: ''105. Beer Price Posting. (a) The schedule of prices for the sale of beer, as required by Section 25000 of the Alcoholic Beverage Control Act, shall be filed with the department on a form prescribed by the department . . . . Contract prices for future deliveries of beer and quantity discounts shall not be filed with the department.''

Plaintiffs, operators of large chain grocery stores offering beer for sale, petitioned the department to eliminate that part of the rule proscribing quantity discounts. After a hearing, the department denied the petition. Plaintiffs then sought and obtained a writ of mandate in the superior court requiring the deletion of the reference to quantity discounts in rule 105(a). The department has appealed from that ruling.

As we shall explain, the judgment of the trial court must be reversed because rule 105(a) lies within the scope of the authority granted to the department in section 25006 to ''adopt such rules . . . as will foster and encourage the orderly wholesale marketing and wholesale distribution of beer.'' In reviewing the propriety of administrative regulations allegedly promulgated pursuant to a grant of power by the Legislature, this court undertakes a two-pronged

[1] In relevant part, these sections provide as follows: Section 25006 of the Business and Professions Code: ''Administrative Rules and Regulations. The department may adopt such rules, including but not limited to rules respecting beer price posting, as will foster and encourage the orderly wholesale marketing and wholesale distribution of beer. . . .''

Section 25750 of the Business and Professions Code: ''Rules and Regulations. The department shall make and prescribe such reasonable rules as may be necessary or proper to carry out the purposes and intent of Section 22 of Article XX of the Constitution and to enable it to exercise the powers and perform the duties conferred upon it by that section or by this division . . . .''

. Section 22 of article XX of the California Constitution: ''The State of California, subject to the internal revenue laws of the United States, shall have the exclusive right and power to license and regulate the manufacture, sale, purchase, possession and transportation of alcoholic beverages within the State. . . . The Department of Alcoholic Beverage Control shall have the exclusive power, except as herein provided and in accordance with laws enacted by the Legislature, to license the manufacture, importation and sale of alcoholic beverages in this State . . . . The department shall have the power, in its discretion, to deny, suspend or revoke any specific alcoholic beverages license if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals . . . .''

inquiry. As we pointed out in *Morris* v. *Williams* (1967) 67 Cal.2d 733, 748-749 [63 Cal.Rptr. 689, 433 P.2d 697], we first determine whether the regulation lies within the scope of authority conferred, and, second, "[i]f we conclude that the Administrator was empowered to adopt the regulations, we must also determine whether the regulations are 'reasonably necessary to effectuate the purpose of the statute.' (Gov. Code, § 11374.)"[2] Furthermore, these issues do not present a matter for the independent judgment of an appellate tribunal; rather, both come to this court freighted with the strong presumption of regularity accorded administrative rules and regulations. Reviewed in this posture, rule 105(a) is clearly valid.

Plaintiffs urge that we reject these well established doctrines of limited judicial review because, they allege, rule 105(a) provides for price fixing and, in the absence of explicit statutory language, courts traditionally hesitate to attribute to the Legislature an intentional grant of the power to fix prices. As we shall point out, however, rule 105(a) does not constitute a price-fixing measure because its prohibition against discrimination in the posting of a price is not a fixing of the price for the sale of the commodity.

1. *Rule 105(a), which in effect prohibits manufacturers, importers, and wholesalers from grantimg discounts for quantity purchases, lies within the authority delegated to the department by section 25006 to promulgate rules that "foster and encourage the orderly wholesale marketing and wholesale distribution of beer" and reasonably effectuates the purpose of the statute.*

Our issue turns upon whether a rule prohibiting quantity discounts in the sale of beer lies within the scope of the power delegated by the Legislature to the department and whether the rule reasonably effectuates the statutory purposes.

Section 25006 provides that "[t]he department may adopt such rules, including but not limited to rules respecting beer price posting, as will foster and encourage the orderly wholesale marketing and wholesale distribution of beer." Section

---

[2]Professor Davis has stated the point generally. "In reviewing a legislative rule a court is free to make three inquiries: (1) whether the rule is within the delegated authority, (2) whether it is reasonable, and (3) whether it was issued pursuant to proper procedure." (1 Davis, Administrative Law Treatise (1958) § 5.05; cf. *Whitcomb Hotel, Inc.* v. *California Emp. Com.* (1944) 24 Cal.2d 753, 756, 759 [151 P.2d 233, 155 A.L.R. 405].) In the present case, all parties agree that rule 105(a) was enacted pursuant to the proper procedure.

11373 of the Government Code establishes the principle that "[e]ach regulation adopted, to be effective, must be within the scope of authority conferred in accordance with standards prescribed by other provisions of law."

In determining whether a specific administrative rule falls within the coverage of the delegated power, the sole function of this court is to decide whether the department reasonably interpreted the legislative mandate. ▪ Although "final responsibility for the interpretation of the law rests with the courts" (*Whitcomb Hotel, Inc.* v. *California Emp. Com., supra,* 24 Cal.2d 753, 757), we nevertheless do not exercise an independent judgment as to what constitutes promotion of "orderly wholesale marketing and distribution." The Legislature, in enacting section 25006, clearly intended to commit that decision to the expertise of the Department of Alcoholic Beverage Control. "[T]he very delegation of such a rulemaking power recognizes an area of discretion in defining the term and restricts a court to the question whether the definition is consistent with the statutory term and purpose." (Jaffe, Judicial Control of Administrative Action (1965) 564-565.)

The cases have said, "[t]he construction of a statute by the officials charged with its administration must be given great weight." (*Whitcomb Hotel, Inc.* v. *California Emp. Com., supra,* 24 Cal.2d 753, 756; *Morris* v. *Williams, supra,* 67 Cal.2d 733, 748.) ▪ [See fn. 3] Thus the courts recognize that the Legislature must be permitted to rely on the peculiar ability of an administrative agency to achieve continuous, flexible. and expert regulation; this court's role is limited to determining whether the delegee has reasonably interpreted the power which the Legislature granted it.[3]

---

[3]Our recognition of the limited role of the courts does not imply, of course, that an administrative agency may "exercise its sublegislative power to modify, alter or enlarge the provisions of the legislative act which is being administered." (*Harris* v. *Alcoholic Beverage Control Appeals Board* (1964) 228 Cal.App.2d 1, 6 [39 Cal.Rptr. 192]; see also, e.g., *First Industrial Loan Co.* v. *Daugherty* (1945) 26 Cal.2d 545, 550 [159 P.2d 921]; *Knudsen Creamery Co.* v. *Brock* (1951) 37 Cal.2d 485, 492-493 [234 P.2d 26].) Although the administrator cannot "modify, alter or enlarge" the delegated power, neither should we infer that the Legislature contemplated specific, identifiable actions by the administrator and that anything else is a "modification" or "alteration." Since the very purpose of delegation is to take advantage of the flexibility and expertise of the agency, the Legislature should be understood to have delegated the power to use a properly channelled discretion in dealing with the problem at issue. The prohibition against modifying or enlarging the delegated power refers only to actions completely beyond this discretion.

The department maintains that rule 105(a) promotes "orderly wholesale marketing and distribution of beer" in the following two respects, *inter alia*: (1) Many small retailers will take advantage of quantity discounts even if they lack either the turnover or the storage space to assure that all the beer bought at the discount rate can be sold while it is still fresh. Prohibition of quantity discounts removes this inducement to sell inferior beer. (2) In the absence of rule 105(a) chain stores could force suppliers to grant quantity discounts by conditioning the continuation of their lucrative large volume of business on the grant of such rebates. As a result, those retailers unable to buy in such quantities would suffer severe competitive disadvantage and could be eliminated.

We believe that the department could reasonably conclude that the legislative purpose of encouragement of the orderly wholesale marketing and distribution of beer warranted rule 105(a) on either of these two bases. Thus, in the first instance, the department might reasonably conclude that the suppression of the sale of stale beer promotes orderly marketing and distribution. A regulation designed to eliminate inferior products from the marketplace, especially if, as in the instant case, the consumer's external inspection would not reveal the internal defects of the commodity, promotes "orderly marketing."

Second, as we have said, the department might reasonably conclude that the protection and preservation of small retailers promotes orderly marketing. Indeed, the grant of discounts to giant multiple retailers in return for huge purchases emperils the vitality of the small retailers who are unable to buy in sufficient quantity to compete with the chain stores. In addition, distributors and manufacturers of slow-moving brands might also suffer competitively from the availability of volume discounts; the department might reasonably conclude that some retailers, unable to turn over such brands at a rapid rate, would be unwilling to deal with these producers and distributors on a volume basis and would thus promote those more popular brands on which a discount was, for practical purposes, available.

The quantity discount, in the long run, thus tends to decrease the number of competitors at all three levels, the manufacturer, wholesaler, and retailer, and, concurrently, to reduce competition. In *Wilke & Holzheiser, Inc.* v. *Department of Alcoholic Beverage Control* (1966) 65 Cal.2d 349, 362 [55 Cal.Rptr. 23, 420 P.2d 735], we premised the constitutionality

of the retail price maintenance provisions of the Alcoholic Beverage Control Act, in part, upon the Legislature's design to preserve the small retail outlet. We said: "The Legislature may likewise have concluded that giant retailers and chain markets should be afforded no opportunity to use loss leaders in branded liquor to attract customers in disregard of Business and Professions Code section 17044 and thus ultimately to force smaller retailers out of business. Such tactics, the Legislature may have thought, would disrupt orderly distribution by endangering the continued vitality of one method of marketing: the corner grocery store."

The department's authority to prohibit discounts which it believes to be discriminatory becomes all the more clear when we test it against some hypothetical examples involving discriminatory pricing. As we have explained, rule 105(a) in part sought to preserve existing channels of distribution. Thus we would not doubt that the department could prohibit the wholesaler from giving a discount to one selected retailer or to those retailers in one selected neighborhood or to those retailers of one selected racial background. In such instances the department could clearly exorcise such preferment. Similarly the department could reasonably conclude that the quantity discount was an equivalent preferment that would disrupt the orderly marketing of beer.

Indeed, in legislation dealing with the commodity of "hard" liquor, comparable in many ways to beer, the Legislature has expressly recognized the relationship between the preservation of a sound market by an elimination of price discrimination among purchasers and "orderly" marketing: "In order to eliminate price wars which . . . disrupt the orderly sale and distribution [of alcoholic beverages] . . . it is hereby declared as the policy of this State that the sale of alcoholic beverages should be subjected to certain restrictions and regulations." (Bus. & Prof. Code, § 24749; cf. *Allied Properties* v. *Department of Alcoholic Beverage Control* (1959) 53 Cal.2d 141, 149 [346 P.2d 737].) Since the Legislature has itself recognized the nexus between price discrimination and orderly marketing and distribution, the department cannot be said to have abused its discretion in so doing.

*Blatz Brewing Co.* v. *Collins* (1945) 69 Cal.App.2d 639 [160 P.2d 37], the only appellate court decision specifically interpreting the language of "orderly marketing and distribution" here at issue, confirms the above interpretation. The court there, interpreting section 38(e) of the Alcoholic Bev-

erage Control Act of 1935, as amended,[4] the predecessor to section 25006, declared invalid a regulation that prohibited the purchase of beer brewed outside California by a party lacking a certificate of compliance. The court construed section 38(e) as follows: "We are satisfied that . . . the language found in section 38(e) . . . must be confined to such rules for 'the orderly wholesale marketing and wholesale distribution of beer' as have to do with the *stabilization* of the wholesale prices of that beverage." (*Id.* at p. 652.) (Italics added.) This language supports rule 105(a) to the extent that it requires a nondiscriminatory and uniform, or "stabilized," wholesale price.

For all of the above reasons we believe that the department could reasonably conclude that the authority delegated to it embraced the questioned rule. As we shall now point out, the same and some analogous reasons support its decision that the rule was "reasonably necessary to effectuate the purpose of the statute." (Gov. Code, § 11374.)

Our function in passing upon the efficacy of the *means* employed by the agency to effectuate the statutory purposes is, again, a very limited one. As we have said, "the court should not substitute its judgment for that of an administrative agency which acts in a quasi-legislative capacity. . . . [A court] will not . . . superimpose its own policy judgment upon the agency in the absence of an arbitrary and capricious decision." (*Pitts* v. *Perluss* (1962) 58 Cal.2d 824, 832 [27 Cal.Rptr. 19. 377 P.2d 83] ; see also *Morris* v. *Williams, supra,* 67 Cal.2d 733, 749 ; *Ray* v. *Parker* (1940) 15 Cal.2d 275, 310 [101 P.2d 665] ; *Rible* v. *Hughes* (1944) 24 Cal.2d 437, 445 [150 P.2d 455, 154 A.L.R. 137] ; *Faulkner* v. *California Toll Bridge Authority* (1953) 40 Cal.2d 317, 329 [253 P.2d 659] ; *Emby Foods, Inc.* v. *Paul* (1964) 230 Cal.App.2d 687, 694 [41 Cal.Rptr. 365].) We cannot condemn as arbitrary and capricious the department's conclusion that it may properly employ rule 105(a) as a method to discourage the sale of stale beer and promote an orderly sale and distribution of beer by prohibiting the preferential discount.

Nor, in reaching this conclusion, can we consider alternative methods of regulation available to the department. "[I]n determining whether the director has acted arbitrarily

---

4"The board may adopt such other rules and regulations as will foster and encourage the orderly wholesale marketing and wholesale distribution of beer . . . ." We see no distinction in meaning between the relevant parts of section 38(e) and section 25006.

or capriciously, this court does not inquire whether, if it had power to draft the regulation, it would have adopted some method or formula other than that promulgated by the director. The court does not substitute its judgment for that of the administrative body." (*Pitts* v. *Perluss, supra,* 58 Cal.2d 824, 834-835; compare, e.g., *Bagley* v. *Washington Township Hospital Dist.* (1966) 65 Cal.2d 499, 501-502 [55 Cal.Rptr. 401, 421 P.2d 409] (judicial examination of alternative methods of regulation if constitutional rights impaired).) Thus, we do not consider whether, for example, the department would better have served the cause of fresh beer by requiring sale within a certain number of days after delivery or by requiring each retailer to have adequate refrigeration facilities. This court is in no position to attempt to reach an independent decision as to whether the department actually used the best method of accomplishing the statutory objective; even to undertake such a task would be to frustrate the legislative policy of reliance upon the special competence of the department. Our function narrows to a determination of whether the department used a method that was not arbitrary and capricious.

Considered from this viewpoint, the regulation must be sustained. We see nothing arbitrary or capricious in the department's conclusion that rule 105(a) promotes the sale of fresh beer and aids in preserving small retailers and manufacturers and, in the long run, fosters competition.

2. *The absence of an explicit legislative authorization to prohibit quantity discounts does not invalidate rule 105(a).*

Plaintiffs contend that, even assuming *arguendo* that rule 105(a) promotes orderly marketing and distribution, the prohibition of quantity discounts must fail on the ground that it constitutes a price-fixing measure. Essentially, plaintiffs urge that only an explicit expression by the Legislature can delegate to an agency the power to engage in "price-fixing." (See, e.g., *Levine* v. *O'Connell* (1949) 275 App.Div. 217, 220-221 [88 N.Y.S.2d 672], affd. (1950) 300 N.Y. 658 [91 N.E.2d 322].)

We need not inquire into whether section 25006 meets this claimed test on specificity, however, because rule 105(a) does not constitute "price-fixing." Rule 105(a) allows each manufacturer and wholesaler to set prices as he wishes; price competition between brands remains unimpeded. Rule 105(a) only operates to prevent variations in the price established by the manufacturer and wholesaler.

The prohibition of a discriminatory price cannot be deemed a directive to fix a price; the manufacturer or wholesaler may sell at whatever price he chooses, but he may not post a different and discriminatory price for one buyer than for another. The prohibition of price discrimination in the sale of beer is no more a mandate that beer be sold at a fixed price than the prohibition of race discrimination in the sale of property is a mandate that the property be sold at a fixed price.

We have recently pointed out the basic difference between price fixing and regulated price posting. In *Wilke & Holzheiser, Inc.* v. *Department of Alcoholic Beverage Control, supra,* 65 Cal.2d 349, this court upheld the mandatory retail price maintenance provisions of the Alcoholic Beverage Control Act. (Bus. & Prof. Code, §§ 24749-24757.) We sustained the statute against the challenge that its retail price maintenance provisions unlawfully delegated legislative power by enabling each producer and wholesaler to set the price below which retailers were forbidden to sell their products.

In *Wilke & Holzheiser,* we said: "All three arguments [in support of the challenge] ignore the basic difference between a statute requiring the unilateral designation by each producer of the resale price of his own product and a statute requiring the multilateral observance by all competitors of a fixed minimum price of a commodity. That the private act of specifying a resale price is lifted by the statute beyond the contracting producer and retailer to a publicly enforced observance by all retailers within the state does not convert the legislation into a 'price-fixing' statute, since the law still empowers no one to regulate the retail price of any commodity." (*Id.* at p. 368.)[5]

Indeed, since manufacturers of beer are allowed, although not compelled, to set minimum retail prices on their product (Bus. & Prof. Code, § 24755, subd. (i)), we doubt that the rule can at all affect retail prices. To the extent that manufacturers do set a minimum retail price and that retailers in fact

[5] In *Oklahoma Alcoholic Beverage Control Board* v. *Central Liquor Co.* (Okla. 1966) 421 P.2d 244, which involved the question whether the practice of granting quantity discounts contravened the state alcoholic beverage control act, the court adopted an analysis similar to that of *Wilke:* in response to the argument that the statute did not authorize the fixing of wholesale liquor prices, the court asserted that such price fixing was not at issue, concluding that the statute "does not purport to set minimum price for wholesale liquor . . . . Each wholesaler continues to have the right to establish any price it chooses for alcoholic beverages. *After* the price has been established, the directive operates to prevent price deviation based upon quantity." (421 P.2d at p. 249.) (Italics in original.) The same reasoning disposes of plaintiffs' "price fixing" contention in the instant controversy.

charge that price, the presence or absence of quantity discounts at the wholesale level does not change the price charged the consumer. Since the manufacturer may file a minimum retail price, the retailer, even if he wanted to pass part of a quantity discount on to his customers, would be powerless to do so. If plaintiffs are correct in urging that only an explicit expression of the Legislature is sufficient to delegate the power to fix prices, then we must note that price fixing does not occur here, that the retail price may well not be affected, and that the only economic interests involved are those of the wholesaler and retailer and not the public.

To bolster their argument that the Legislature must expressly authorize the prohibition of quantity discounts on transactions in beer, plaintiffs point to the specific statutory language dealing with quantity discounts on milk and wine. As to milk, the Legislature enacted: ''Minimum retail price schedules for fluid milk, fluid cream, or both, which are established by the director for retail stores may provide for quantity discounts. Such discounts shall be no more than those which give effect to store handling cost differences in the sale of single orders of varying quantities of fluid milk, fluid cream, or both, to retail customers.'' (Agr. Code, § 62484.) As to wine, the statute provides: ''The total quantity and prompt payment discounts [for wine], if any, to retailers shall not exceed 10 percent per case for case lots.'' (Bus. & Prof. Code, § 24871.) Plaintiffs contend that since the Legislature did not specifically refer to quantity discounts on beer, the proscription of such discounts does not come within the purview of section 25006's rule-making authorization.

In so arguing, however, plaintiffs fail to appreciate the function of specific statutory mandates and general grants of power in a delegation of authority by the Legislature. To the extent that the Legislature considers a given problem and determines the best method of dealing with it, it may specifically include its resolution of the matter in statutory law; in sections 62484 and 24871, for example, the Legislature considered the relationship between quantity discounts and the marketing of milk and wine, respectively, and described with particularity the administrator's power. But the Legislature's failure to include express provisions as to beer, rather than suggesting a restriction on the department's power to prohibit or limit quantity discounts, indicates only that the Legislature did not itself attempt to determine the

proper relationship between the special problems of the marketing of beer and various methods of regulating it. Instead, the Legislature gave the department a general mandate: to use its expertise and power of continuous regulation as it sees fit to "promote orderly marketing and distribution." One tool available to accomplish this goal was the prohibition of quantity discounts. In not mentioning this method, the Legislature left the question of its propriety for the department.

In urging the opposite result, plaintiffs rely heavily on *Schenley Industries, Inc.* v. *Munro* (1965) 237 Cal.App.2d 106 [46 Cal.Rptr. 678]. In that case the court struck down the Department of Alcoholic Beverage Control's rule 100, which promulgated an elaborate formula for proscription of quantity discounts of more than 8 percent on cases of distilled spirits. *Schenley* is possibly distinguishable from the instant case, however, on two grounds. First, instead of an authorization to encourage "orderly wholesale marketing and wholesale distribution" of the product involved, the court in *Schenley* confronted a rule based on a much more general legislative mandate to the department—to make "such reasonable rules as may be necessary or proper . . . to enable it to exercise the powers and perform the duties conferred upon it . . . ." (Bus. & Prof. Code, § 25750.) The court only held that this general authorization was insufficient support for the rule in question. Second, *Schenley* did not involve a departmental rule designed to eliminate spoilage, since the products involved in that case could be safely stored without refrigeration. But to the extent that *Schenley* is inconsistent with this opinion, particularly in its reliance on the proposition that a prohibition of quantity discounts constitutes "price-fixing" requiring explicit legislative authorization, it is disapproved.

We conclude that the rule prohibiting quantity discounts lies within the scope of the power delegated by the Legislature to the department and that it reasonably effectuates the statutory purposes. Further, the prohibition of the posting of a discriminatory price which is based upon a quantity discount does not constitute the fixing of a price; plaintiffs' contention that an explicit legislative delegation is required because the delegation involves price fixing must therefore fail.

The judgment is reversed.

Traynor, C. J., Mosk, J., and Sullivan, J., concurred.

184

BURKE, J., Dissenting.—In my view the opinion prepared for the Court of Appeal by Presiding Justice Devine and concurred in by Justice Rattigan and Justice Christian (reported in (Cal.App.) 62 Cal.Rptr. 914) properly construes and applies the constitutional and statutory provisions relied upon by appellants, the Department of Alcoholic Beverage Control and its director, in their efforts to sustain the rule forbidding quantity discounts on wholesale sales of beer. Furthermore, I think it adequately discusses and correctly resolves adversely to the department the questions presented on this appeal.[1]

[1]Presiding Justice Devine's opinion, with deletions appropriate to this dissent, is as follows (brackets together, in this manner [ ], are used to indicate deletions from the opinion of the Court of Appeal; see *Simmons* v. *Civil Service Emp. Ins. Co.* (1962) 57 Cal.2d 381, 383, fn. 1 [19 Cal. Rptr. 662, 369 P.2d 262]):

[ ] *The Constitution*

That part of section 22, article XX, of the California Constitution upon which appellants rely provides: ''The Department of Alcoholic Beverage Control shall have the exclusive power, except as herein provided and in accordance with laws enacted by the Legislature, to license the manufacture, importation and sale of alcoholic beverages in this State, and to collect license fees or occupation taxes on account thereof. The department shall have the power, in its discretion, to deny, suspend or revoke any specific· alcoholic beverage license if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals. . . .'' That this part of the Constitution is not the source of the· authority to fix prices, and that the forbidding of quantity discounts does constitute price fixing, has been established in *Schenley Industries, Inc.* v. *Munro,* 237 Cal.App.2d 106, 111-112 [46 Cal. Rptr. 678]. The *Schenley* case had to do with the department's rule 100, which restricted quantity discounts on wholesale sales of distilled spirits, while rule 105(a) deals with sales of beer. But whatever suggestions may be made of distinctions between the statutes relating to sales of distilled spirits and those regulating sales of beer, the section of the Constitution is the same. It cannot be said of wholesale sales of beer, any more than of wholesale sales of distilled spirits, that the prevention of quantity discounts is a proscription of conduct or conditions which, in the wording of the Constitution, ''would be contrary to public welfare or morals.'' In fact, since certain evidence cited by appellants is to the effect that the discounts would not be passed on to the consumer if the rule were abolished; appellants cannot rely on the proposition (as expressed in *Allied Properties* v. *Department of Alcoholic Beverage Control,* 53 Cal.2d 141 [346 P.2d 737], and *Wilke & Holzheiser, Inc.* v. *Department of Alcoholic Beverage Control,* 65 Cal.2d 349 [55 Cal.Rptr. 23, 420 P.2d 735], sustaining the Fair Trade Act as applied to alcoholic beverages) that the rule promotes temperance by eliminating price cutting to the consumer.

*Business & Professions Code Section 25006*

This section reads as follows: ''The department may adopt such rules including but not limited to rules respecting beer price posting, as will foster and encourage the orderly wholesale marketing and wholesale distribution of beer, but no such action shall be taken by the department except after public hearing and ten (10) days notice to all licensed manufacturers of beer in California of the time and place of the hearing and of the character of the action intended to be taken by the depart-

For the reasons therein stated, I would affirm the judgment of the trial court.

McComb, J., and Peters, J., concurred.

Respondents' petition for a rehearing was denied September 11, 1968. McComb, J., Peters, J., and Burke, J., were of the opinion that the petition should be granted.

ment.'' Since 1937 there has been a statute giving rule-making authority to the department or to its predecessor, the State Board of Equalization, to adopt such rules as will foster and encourage the orderly wholesale marketing and wholesale distribution of beer. The predecessor section to 25006 was section 38e of the Alcoholic Beverage Control Act. (Stats. 1937, ch. 758, p. 2159.) In 1953 the words ''such rules'' were modified by addition of the clause, ''including but not limited to rules respecting beer price posting.'' (Stats. 1953, ch. 152, p. 1009.)

We conclude that section 25006 does not confer on the department the power to forbid quantity discounts in wholesale sales of beer. Our reasons are:

1. The fixing of prices by governmental agencies is a large intervention by government into the economy. The delegation of such power by the Legislature ought to be explicit and not to be inferred from a statute which provides in a general way for rules relating to orderly marketing and distribution.

2. When the Legislature wished to limit (although it did not completely forbid) quantity discounts in the wholesale purveying of wine, it did so explicitly by the terms of section 24871 of the Business and Professions Code.

3. When, in 1953, the Legislature added the words, ''including but not limited to rules respecting beer price *posting*'' (italics added), it would be expected that if the Legislature intended to grant the power to prevent quantity discounts, it would have said so.

4. The whole pattern of price regulation in respect of alcoholic beverages, with the exception of the limitation on quantity discounts in the wholesale marketing of wine, as expressly provided for by statute, is a conjunction of posting of prices by the seller at his own choice as he views the state of the market and of competition with a prohibition against sales at prices which depart from the posted ones, and the use, wherever applicable, of the Fair Trade Act. It is true that the outlawing of quantity discounts does not fix prices in the same manner as would exist if the government were to declare the exact price at which a commodity could be sold, but it does fix prices by making it impossible for a seller to choose a lower price for a larger sale.

5. The *Schenley* case is also an authority for our conclusion, but by no means an exclusive one, for we have stated our reasons given independently of that case, although some of them correspond with the reasoning to be found therein. Appellants argue that the *Schenley* case, which invalidated the rule limiting quantity discounts in wholesale sales of distilled spirits, is distinguishable from the case before us in several respects. In the first place, appellants say, section 24749 of Business and Professions Code, upon which the department and its director relied in *Schenley,* merely announces the declared policy of the state that the sale of alcoholic beverages should be subjected to certain restrictions and regulations for the purpose of fostering temperance and eliminating price wars which disrupt orderly sale and distribution. Section 25006 of Business and Professions Code, say appellants, is not a mere declaration of

policy but a grant of power. Although we agree that there is a distinction between the two statutes, we do not find the distinction between the *Schenley* case and the one before us to be so great as appellants would have it. In the *Schenley* case the department did not rely solely on section 24749, but also on several other sections: section 24756, which requires posting of a price list for wholesale sales; section 24757, which allows the department to make rules which it deems necessary for the administration of other sections, including section 24756; section 25750, which directs the department to make reasonable rules to carry out the purposes and intent of section 22, article XX of the Constitution and which will enable the department to exercise the powers and perform the duties conferred upon it by that section or by the entire division of the Business and Professions Code which relates to alcoholic beverages. A reading of the *Schenley* case shows that the decision was not based on the nature of section 24749 as an expression of policy but on the fact that the Legislature has seen fit to remain silent as to the subject of permissible discounts on quantity sales of distilled spirits and has not delegated the authority to act in this respect to the department. (*Schenley Industries, Inc.* v. *Munro*, 237 Cal.App.2d at p. 114 [46 Cal.Rptr. 678].)

It is argued by appellants that an essential distinction exists between the marketing of distilled spirits and the marketing of beer, and that this distinction abrogates the authority of the *Schenley* case. The distinction, they say, is this: distilled spirits do not deteriorate on the shelves of the retailer, but beer does deteriorate rather rapidly. Thus, they say, the small retailer must buy from the wholesaler in small lots, paying a higher price than his bigger and more affluent competitors need do, or purchase in too great quantity in order to obtain the discount and risk the spoiling or deterioration of the beer and the probable loss of customers. But we think the trial judge was correct in saying that the test is not one of the desirability or undesirability of the rule, but of what power the Legislature has chosen to give to the department. The evidence as to the advantage of the rule was substantial; but so was the contrary evidence. In the *Schenley* case, too, there was sharp disagreement as to the desirability of the rule. The Court of Appeal decided, as we do in sustaining the trial court, that statutory authority to forbid quantity discounts presently is lacking.

### The Subject of Legislative Ratification of the Rule

Appellants argue that the Legislature demonstrated its approval of rule 105(a) by re-enacting section 25006 or its predecessors after the Legislature had been informed of the existence of the rule and, as appellants state, judicial approval of wholesale price fixing of beer. We shall consider first the cases referred to by appellants. They antedate rule 105(a). Appellants make reference to *Adolph Coors Co.* v. *Corbett* (Cal. App.) 123 P.2d 74, a case in which hearing by the Supreme Court was granted. The case was subsequently dismissed. This case is not authority at all. The mind cannot conceive anything so nearly approaching complete annihilation as an opinion of the Court of Appeal after hearing has been granted by the Supreme Court. (See *Ponce* v. *Marr*, 47 Cal.2d 159 [301 P.2d 837].) Of course, since even this obliterated decision preceded the disputed rule by some nine years, it had nothing directly to do during its brief lifetime with quantity discounts. The second cited case is *Blatz Brewing Co.* v. *Collins*, 69 Cal.App.2d 639 [160 P.2d 37]. In the *Blatz* case, the court declared invalid a rule which required out-of-state beer manufacturers to file a certificate of compliance, which amounted to a license. But in the course of its reasoning, the court uttered this dictum upon which appellants rely: " 'From the foregoing review of section 38e it will be seen that what the legislature dealt with therein was the wholesale selling price of beer; the publication of prices; the maintenance of such prices and strict adherence to them.' " (69 Cal.App.2d at p. 651.) But even this dictum, antedating by some six years the rule against quan-

tity discounts, does not purport to say that the Legislature has given the department the power to fix prices, but to deal with prices, their posting and maintenance. It seems that the court was referring merely to the terms of the statute, which at that time was section 38e of the Alcoholic Beverage Control Act (Stats. 1937, ch. 758, p. 2159), which did then, as its successor statute, Business and Professions Code section 25006, does now, require posting of prices which are fixed by the wholesalers and adherence to the prices as posted.

Appellants also point to the principle that the interpretation of a statute made by the agency which must enforce it is entitled to weight, as stated in *California Motor Express, Ltd.* v. *State Board of Equalization,* 133 Cal.App.2d 237, 240 [283 P.2d 1063]; *Mauro* v. *Department of Mental Hygiene,* 207 Cal.App.2d 381, 387 [24 Cal.Rptr. 505]; and *Peck's Liquors, Inc.* v. *Superior Court,* 221 Cal.App.2d 772, 784-785 [34 Cal. Rptr. 735]. But administrative interpretation cannot give to the agency substantial powers which are not conferred by law. Where the administrative construction is erroneous it does not govern the interpretation of the statute even though the statute is subsequently re-enacted without change. (*Louis Stores, Inc.* v. *Department of Alcoholic Beverage Control,* 57 Cal.2d 749, 759-760 [22 Cal.Rptr. 14, 371 P.2d 758].)

The mere filing of rule 105(a) with the Legislature, as required by section 11380 of the Government Code, does not, simply because no legislative action followed, constitute a ratification by the Legislature. Appellants have not pointed to any instance within the record where the Legislature has had before it a clear presentation, with demand or petition for legislative action, one way or the other, of prohibition of quantity discounts on wholesale sales of beer.