[Civ. No. 46198. Second Dist., Div. Three. Dec. 30, 1975.]

ACTION TRAILER SALES, INC., Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

## COUNSEL

Gibson, Dunn & Crutcher and Richard Chernick for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Philip C. Griffin, Deputy Attorney General, for Defendant and Respondent.

## OPINION

**FORD, P. J.**—Plaintiff Action Trailer Sales, Inc., a California corporation (hereinafter referred to as "Action"), brought suit against the California State Board of Equalization (hereinafter referred to as "Board"), seeking a refund of use tax paid under protest and declaratory relief.

The matter was submitted at trial before a judge sitting without a jury on stipulations of fact filed by the parties. The court issued its memorandum re intended decision, finding in favor of defendant Board. Thereafter, upon proper request, findings of fact and conclusions of law were filed and judgment was rendered in favor of defendant Board. Action appeals from the judgment.

This case involves the question of whether a lessor, who (under Rev. & Tax. Code, § 6006, subd. (g)(5)), leases tangible personal property in

substantially the same form as acquired, may elect to either pay sales or use tax measured by the purchase price of the leased property or use tax based on rental receipts from the subsequent rental of such property.

The facts are not in dispute. Based on the facts as to which the parties stipulated, the trial court found:

1. That since approximately 1959 Action has been in the business of leasing mobile office trailers. Action acquires trailers by purchase, either from its parent corporation, Roadcraft Manufacturing and Leasing Corporation, or from other vendors. At the time of trial Action had a fleet of over 1,300 such trailers. Action leases mobile office trailers to persons who have need for temporary office facilities such as on the site of construction projects. The trailers may be attached or coupled together in various ways, enabling Action to provide its lessees with a suite of offices having two, three, four or more rooms. While the trailers are on lease, they are stationary and cannot be moved until all units are uncoupled. The units can only be moved over the highway individually and are not used for the transportation of persons or property for hire.

2. "The trailers are leased by plaintiff in substantially the same form in which plaintiff acquired them."

3. "From the inception of Action's business of leasing mobile office trailers in 1959 until August 1, 1965 plaintiff elected to pay sales tax reimbursement on such trailers at the time of their acquisition as measured by the purchase price of such vehicles rather than collecting use tax upon rental receipts derived from the lease of such units during their rental lifetime. After October 1966, plaintiff has paid tax on its purchase of trailers in this same manner."

4. "Between August 1, 1965 and September 31 [sic], 1966 plaintiff acquired and put into rental service approximately 100 office trailers. Plaintiff did not report and pay sales tax on the purchase price of any of said vehicles during this period, nor did it pay use tax measured by the purchase price of said trailers at the time the trailers were first put into rental service. The failure to report and pay sales taxes on the purchase of said trailers was not motivated by an intent to evade the sales and use tax law of the State of California."

5. Action's failure to pay tax on the purchase of the 100 office trailers to which reference is made in the preceding paragraph was discovered

during a routine audit performed by the Board. "When the discrepancy was discovered and verified, Action offered to pay sales tax on the office trailers as to which no tax had been paid measured by the purchase price of those units, together with any interest or penalties due according to law. The Board determined that because Action had failed to pay sales tax reimbursement measured by the purchase price of the trailers at the time it acquired them and had failed to pay use tax measured by the purchase price of the trailers when they were first put into rental service, plaintiff would not be permitted to elect to do so upon the subsequent discovery of such failure, but rather was obligated to collect use tax from its lessees as measured by the rental receipts derived from the lease of those units."

6. Thereafter the Board issued a notice of determination against Action for the tax claimed. Action pursued its administrative remedies and paid the amount claimed to be due by the Board in full. Thereafter Action filed a claim for refund with the Board, which claim was denied. On April 20, 1973, the complaint herein was filed.

The trial court stated conclusions of law (numbers having been changed herein) which are in part as follows:

1. "Revenue and Taxation Code section 6006(g)(5) permits a lessor of tangible personal property who leases that property in the same form in which the property is acquired to pay sales tax reimbursement to its seller upon the purchase of the property, or, to report such lease as a taxable use by plaintiff upon the tax return for the period in which the first lease occurred and to pay a use tax at that time based upon the purchase price of the property. The Revenue and Taxation Code requires the person electing to pay use tax upon the purchase price of the property to report and pay the use tax at the end of the calendar quarter in which the tangible personal property is first leased by the lessor. This is inherent in the language of section 6006(g)(5) and in those sections requiring the filing of returns and the payment of tax. The Legislature has used the past-tense in limiting the election requirement in section 6006(g)(5). By using the words 'has paid' the Legislature demonstrated its purpose to require an election by the lessor at the earliest tax-paying opportunity, within the time limit of those sections requiring reporting and paying of the tax."

2. "Defendant has incorporated this interpretation of section 6006(g)(5) in Regulation 1660(c)(2), that is, in order for a lease of

tangible personal property not to be considered a sale requiring collection of the use tax, the lessor must pay sales tax reimbursement at the time it purchases the property, or use tax at the end of the quarter in which plaintiff has placed the tangible personal property into rental service. This regulation was promulgated within the scope of the Board's rule-making power. It does no more than incorporate the effect of section 6006(g)(5) and the clear legislative intent which can be discerned from that section and those sections governing when report and payment of sales tax reimbursement or use tax is to be made, specifically Revenue and Taxation Code sections 6052, 6451-6454. Hence, the regulation is reasonable and proper and must be sustained. . . ."

3. "When plaintiff failed to pay sales tax reimbursement or use tax based upon the purchase price of the units at the times specified in the Revenue and Taxation Code and Regulation 1660(c)(2) it waived its right to claim that the lease of these 100 units was not a sale. The lease of these 100 units constituted a sale and the defendant acted properly in requiring plaintiff to pay an amount equal to the amount of use tax it should have collected from its lessees."

▇▇▇ Appellant contends that "[t]he trial court erred in concluding that appellant was not entitled to pay use tax measured by the purchase price of the mobile office trailers."

Pertinent sections of the Revenue and Taxation Code will be noted. Section 6051 imposes a tax upon retailers "[f]or the privilege of selling tangible personal property at retail." Section 6052 provides that the sales tax "shall be collected by the retailer from the consumer in so far as it can be done." Section 6201 imposes an excise tax "on the storage, use, or other consumption in this state of tangible personal property . . ." at the rate of a certain percentage of the sales price of the property. Section 6202 provides that the consumer of tangible personal property purchased in this state is liable for use tax except where the retailer collects the tax from the consumer and the consumer has a receipt so indicating. Section 6006, subdivision (g), defines a sale in part as "[a]ny lease of tangible personal property in any manner or by any means whatsoever, for a consideration, *except a lease of:* . . . (5) Tangible personal property leased in substantially the same form as acquired by the lessor or leased in substantially the same form as acquired by a transferor, as to which the lessor or transferor has paid sales tax reimbursement pursuant to Section 6052 or has paid use tax measured by the purchase price of the property. . . ."

Regulation No. 1660 promulgated by the Board provides in pertinent part as follows (Cal. Admin. Code, tit. 18, § 1660(c)(2), p. 502.7): "No sales or use tax is due with respect to the rentals charged for tangible personal property leased in substantially the same form as acquired by the lessor, or by his transferor, as to which the lessor or transferor has paid tax or tax reimbursement measured by the purchase price. If such tax or tax reimbursement has not been so paid, and the lessor desires to pay tax measured by the purchase price, it must be reported and paid timely with the return of the lessor for the period during which the property is first placed in rental service. A timely return is a return filed within the time prescribed by sections 6452 or 6455, whichever is applicable."

Revenue and Taxation Code section 6006, subdivision (g)(5), allows a lessor of tangible personal property leased in substantially the same form as acquired to pay sales tax reimbursement pursuant to section 6052 or use tax measured by the purchase price of the property if the lessor desires to do so rather than to collect sales tax from his lessee. However, as Action points out, the statute does not expressly state "that the election must be made at any particular time." Action argues as follows: "Section 6006(g)(5) does not state, infer, or suggest that the failure, for any reason, to pay use tax on such property at any particular time constitutes a waiver of taxpayers' right so to elect. . . . [¶] Had the legislature intended to deprive lessors of the right to elect at a particular time, it could easily have done so, as it has done in similar taxing provisions. . . . [¶] The modification and alteration of Section 6006(g)(5) wrought by Regulation 1660 is unwarranted, unlawful, and beyond the Board's rulemaking power."

We hold that the construction given to Revenue and Taxation Code section 6006, subdivision (g)(5), in regulation 1660 as set out hereinabove is implicit in and required by the terms of the section read in the context of the sales and use tax law.

The option of paying sales tax reimbursement pursuant to section 6052 by definition must be exercised with respect to the original acquisition of the property by the lessor by paying sales tax to the transferor of the property. The next option is that of paying use tax measured by the purchase price of the property. However, the taxable event is the use of the property and as noted in *Union Oil Co.* v. *State Bd. of Equal.,* 60 Cal.2d 441, at pages 446-447 [34 Cal.Rptr. 872, 386 P.2d 496]: ". . . the statutory definition of 'use' [Rev. & Tax. Code § 6009] includes the

owner's use of the property by means of leasing it . . . ." Thus the taxable event occurs when the lessor first leases the property. Under Revenue and Taxation Code section 6452 "every person purchasing tangible personal property, the storage, use, or other consumption of which is subject to the use tax, who has not paid the use tax due to a retailer required to collect the tax" shall file a return, for purposes of the use tax, for the preceding quarterly period "[o]n or before the last day of the month following each quarterly period of three months." And, under section 6453, "in case of a return filed by a purchaser, the return shall show the total sales price of the property purchased by him the storage, *use,* or consumption *of which became subject to the use tax during the preceding reporting period. . . .*" (Italics added.)

Accordingly, if the lessor chooses the second option, that is, to pay *use* tax measured by the purchase price of the property, the lessor must file his return on or before the last day of the month following the quarterly period of three months in which the taxable event occurred—the taxable event in this case being the original leasing of each trailer.

The two options embodied in section 6006, subdivision (g)(5), which take a lease out of the category of a sale are couched in the past tense. If the lessor has failed to either pay sales tax reimbursement to the transferor at the time of the transfer of the property or has not timely reported and paid use tax based on the purchase price of the property at the time the property is first placed in rental service, the lease of the property is considered a sale and the lessor is either required to collect use tax from the lessee of the property or pay the amount he should have so collected.

As was said in *Henry's Restaurants of Pomona, Inc.* v. *State Bd. of Equalization,* 30 Cal.App.3d 1009, at page 1020 [106 Cal.Rptr. 867]: "The Legislature has delegated to the Board the duty of enforcing the sales tax law, and the authority to prescribe and adopt rules and regulations. (Rev. & Tax. Code, §§ 7051, 7052.) [¶] Such delegation is proper even though it confers some degree of discretion on the administrative body. So long as that discretion is executed within the scope of the controlling statute, it will not be disturbed by the courts. [Citations.]" It is true that the validity of an administrative ruling such as California Administration Code, title 18, section 1660 depends upon whether it is "consistent and not in conflict with the statute [upon which it is based] and reasonably necessary to effectuate the purpose of the statute." (Gov. Code, § 11374.) It *is* also true that the final responsibility for proper interpretation of a

law rests with the courts. (*Whitcomb Hotel, Inc.* v. *Cal. Emp. Com.,* 24 Cal.2d 753, 757 [151 P.2d 233, 155 A.L.R. 405].) ■ However, as was said in *Mission Pak Co.* v. *State Bd. of Equalization,* 23 Cal.App.3d 120, at page 125 [100 Cal.Rptr. 69]: ". . . in making this determination [with respect to the proper interpretation of a statute and the validity of an administrative ruling] 'the construction of a statute by officials charged with its administration . . . is entitled to great weight' (*Morris* v. *Williams,* 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697]), and 'if there appears to be some reasonable basis for the classification, a court will not substitute its judgment for that of the administrative body' (*Rible* v. *Hughes,* 24 Cal.2d 437, 445 [150 P.2d 455, 154 A.L.R. 137]). ■ '[T]he court should not substitute its judgment for that of an administrative agency which acts in a quasi-legislative capacity. . . . [A court] will not, therefore, superimpose its own policy judgment upon the agency in the absence of an arbitrary and capricious decision.' (*Pitts* v. *Perluss,* 58 Cal.2d 824, 832 [27 Cal.Rptr. 19, 377 P.2d 83]; see also *Ralphs Grocery Co.* v. *Reimel,* 69 Cal.2d 172, 179 [70 Cal.Rptr. 407, 444 P.2d 79].) 'If reasonable minds may well be divided as to the wisdom of an administrative board's action, its action is conclusive.' (*Rible* v. *Hughes, supra,* at p. 445.)" In addition, it has been said that an administrative ruling "comes before the court with a presumption of correctness and regularity, which places the burden of demonstrating invalidity upon the assailant [fn. omitted]." (*California Assn. of Nursing Homes etc., Inc.* v. *Williams,* 4 Cal.App.3d 800, 810 [84 Cal.Rptr. 590, 85 Cal.Rptr. 735].)

■ In the instant case it is manifest that requiring the reporting of taxes due and the filing of returns with respect thereto is essential to the proper administration of the tax laws. In promulgating regulation 1660 the Board did no more than interpret Revenue and Taxation Code section 6006, subdivision (g)(5), in the light of the standard tax reporting system provided for in Revenue and Taxation Code sections 6452 and 6453. Thus, the regulation was consistent with section 6006, subdivision (g)(5), and reasonably necessary to effectuate the purpose of the statute.

Another recognized test for determining the reasonableness of an administrative ruling is that where the Legislature has amended the statute in question it may be presumed that the amendments were made with full knowledge of the construction placed on the statute by the administrative agency in its administrative ruling. ■ Thus, where the Legislature has failed to modify the statute so as to require an interpretation contrary to the regulation, that fact may be considered to be an indication that the ruling was consistent with the Legislature's

intent. (*Coca-Cola Co.* v. *State Bd. of Equalization,* 25 Cal.2d 918, 922 [156 P.2d 1].) Subdivision (g) was added to Revenue and Taxation Code section 6006 in 1965. Regulation 1660(c)(2) (Ruling 70) was adopted in August of that year. Since that time Revenue and Taxation Code section 6006 has been amended in 1966, 1967, 1970, 1971 and 1974. None of the amendments indicated that the Legislature intended an interpretation of the statute contrary to that given it by the Board in regulation 1660.

In the instant case the trial court correctly determined that regulation 1660 was "reasonable and proper" and that it was "promulgated within the scope of the Board's rule-making power." The trial court also properly determined that "the lease of the 100 units in question constituted a sale and [that] the defendant [Board] acted properly in requiring plaintiff [Action] to pay an amount equal to the amount of use tax it should have collected from its lessees."

The judgment is affirmed.

Allport, J., and Potter, J., concurred.