[No. A048996. First Dist., Div. Four. Oct. 16, 1991.]

TETRA PAK, INC., Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION, Defendant and Appellant.

**COUNSEL**

Fulbright & Jaworski, Peter H. Mason and Calvin House for Plaintiff and Appellant.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Timothy G. Laddish, Assistant Attorney General, Richard F. Finn and Julian O. Standen, Deputy Attorneys General, for Defendant and Appellant.

**OPINION**

**POCHÉ, Acting P. J.**—California was one of a number of states that during the mid-1980's enacted an amnesty program which gave delinquent taxpayers a period within which to square unpaid or unreported accounts in

exchange for the surrender by the state of its power to seek penalty surcharges and criminal sanctions. One of the issues presented here is whether such a delinquent taxpayer is entitled to make the same election of the basis by which its tax is to be measured that it could have made had it filed a timely tax return. We hold that the election period is extended for the duration of the amnesty.

Another legislative product of the 1980's is the "California Taxpayers' Bill of Rights," one provision of which (Rev. & Tax. Code, § 7156)[1] grants trial courts the power to award attorneys' fees to taxpayers that have prevailed in tax-related litigation where the state's position was "not substantially justified." We conclude that this commonly employed statutory language vests the trial court with discretion to make such an award subject to reversal only for abuse.

## BACKGROUND

This dispute is comprehensible only if a certain feature of the sales and use tax system is understood. The lessor of tangible personal property which is leased in substantially the same form as it was acquired is ordinarily required to pay a use tax which is measured by the amount of rental receipts. An alternative measure—the property's purchase price—can be elected if the lessor files a return to this effect with the State Board of Equalization (Board) when the property is first leased. All of this is spelled out by the Board in a regulation (Cal. Code Regs., tit. 18, § 1660) which has been judicially approved. (See *Action Trailer Sales, Inc.* v. *State Bd. of Equalization* (1975) 54 Cal.App.3d 125 [126 Cal.Rptr. 339].)

This was the system into which came plaintiff Tetra Pak, Inc., engaged in the business of leasing machinery used for the sterile packaging of liquids. Although it had been leasing machinery in California since the middle of 1980, not until the beginning of 1984 did Tetra Pak (a Texas corporation with no place of business or employees located in California) conclude that it was and always had been liable for use tax. In light of this conclusion, Tetra Pak began filing with the Board use tax returns for reporting periods commencing that year, electing to pay the tax on the basis of rental receipts.

It was about this time that California enacted legislation (Stats. 1984, ch. 1490, § 12, p. 5220) directing the Board to "develop and administer a tax penalty amnesty program" (§ 7070). Tetra Pak filed timely amnesty returns for the years 1980 up to 1984. For these returns, however, Tetra Pak elected to pay the use tax based on the purchase price of the machines it leased.

---

[1]Statutory references are to this code unless otherwise indicated.

From an audit conducted in 1985, the Board determined that in the amnesty returns, Tetra Pak was not entitled to make the election to pay on a purchase price basis and would be entitled to full amnesty only if it accepted the Board's formula for computing the amount of tax due.

The Board's position was sustained in administrative proceedings. Once those were exhausted, Tetra Pak commenced this action for refund. The trial court entered judgment for Tetra Pak, but refused to award attorneys' fees. The Board appeals from the judgment which orders it to return approximately $540,000. Tetra Pak's appeal is from those portions of the judgment and subsequent orders purportedly reflecting the denial of its application for an award of attorneys' fees.

REVIEW

I

The Board initially contends that Tetra Pak's election to pay use tax measured by cost was untimely. In the ordinary case this would be true (see *Action Trailer Sales, Inc.* v. *State Bd. of Equalization, supra*, 54 Cal.App.3d 125, 131-132), and probably would be dispositive of the Board's appeal in its favor. But the amnesty program makes Tetra Pak's situation unordinary. ■ The remaining arguments made by the Board all come down to the common theme that the amnesty did not reopen or extend the election period Tetra Pak would have had if it had begun filing returns as it should have in 1980. The Board is wrong.

■ An amnesty is a collective pardon (see e.g., *Way* v. *Superior Court* (1977) 74 Cal.App.3d 165, 177 [141 Cal.Rptr. 383]), a most perfect example of remedial legislation. "Remedial statutes are to be construed to promote their purposes and protect persons within their purview. Relief will be granted unless clearly forbidden by statute. The statute will be construed when its meaning is doubtful so as to suppress the mischief at which it is directed, to advance or extend the remedy provided, and to bring within the scope of the law every case which comes clearly within its spirit and policy." (*Booth* v. *Robinson* (1983) 147 Cal.App.3d 371, 378 [195 Cal.Rptr. 130], citations omitted; see *Farzad* v. *Chandler* (N.D.Tex. 1987) 670 F.Supp. 690, 694 [rule applied to amnesty program].)

■ The amnesty program was enacted with this declaration of purpose: "It is the intent of the Legislature, in enacting tax penalty amnesty programs, as provided by this act, to improve compliance with state tax laws and to accelerate and increase collections of certain currently owed state taxes. The Legislature finds and declares that a public purpose is served by the waiver

of tax penalties and criminal prosecution in return for the immediate reporting and payment of previously underreported, nonreported, or certain nonpaid tax liabilities. The benefits gained by this program include, among other things, accelerated receipt of certain currently owed taxes, permanently bringing into the tax system taxpayers who have been evading tax, and providing an opportunity for taxpayers to clear their records and satisfy tax obligations before stepped-up tax enforcement programs take effect . . . ." (Stats. 1984, ch. 1490, § 1, p. 5217.)

The ends and means of the amnesty program could not be clearer. The Legislature wished to expand the tax rolls and revenues with a minimal investment of time and trouble by foregoing the ordinarily tedious and expensive process of rooting out evaders. In return for lightening the burden of taxing and prosecuting authorities, the Legislature promised a fresh start for taxpayers who voluntarily came forward and cleared their books. The most obvious way to make the amnesty program effective is to temporarily suspend the disincentives which keep many from contributing to the state's coffers. This the Legislature did by surrendering all sanctions except the payment of principal and the running of interest; those who came forward during the four-month amnesty period were promised that there would be no criminal prosecutions and "all penalties" imposed by the Sales and Use Tax Law would be waived by the Board. (See § 7072, subd. (a)(1).) The obligation to the state was thus made no more fearsome than an obligation to a credit card company.

We do not think the Legislature meant to lure out of hiding nonpayers of tax with the implicit promise "Come out, come out, wherever you are. All is forgiven," and then have the Board announce that a tiny technicality was not covered by the Legislature's promise. The idea that the fresh start did not include the ability to make the same election the taxpayer could have made had it made a timely tax return is at odds with the whole philosophy of the amnesty.

It is clearly consistent with the amnesty program that this sometimes vital ability to elect as to basis be restored to the taxpayer. Reviving this right of control in the taxpayer is not "clearly forbidden by statute," but is merely an application of the principles that "[r]emedial statutes are to be construed to promote their purposes and protect persons within their purview" and "to advance or extend the remedy provided, and to bring within the scope of the law every case which comes clearly within its spirit and policy." (*Booth* v. *Robinson, supra,* 147 Cal.App.3d 371, 378.) Bringing taxpayers such as Tetra Pak onto the tax rolls was the amnesty's patent purpose. That purpose is disserved by the Board making the amnesty program a trap for the unwary who took the Legislature at its word. During the period of the program's

operation, the Board could not process amnesty filings with a business-as-usual attitude. The Legislature recognized as much when it directed the Board to develop, implement, and administer the amnesty program. (§§ 7070, 7075.) The trial court correctly recognized that the Board was not entitled to rely on the rules and practices of "the standard tax reporting system" (*Action Trailer Sales, Inc. v. State Bd. of Equalization, supra*, 54 Cal.App.3d 125, 133) as if unaffected by the amnesty program. The refund ordered by the trial court is the direct and proper result of the Board's unjustified rigidity.

## II

 The trial court determined that Coca-Cola Foods Division (CCFD) acted as Tetra Pak's agent when CCFD paid use tax to the Board prior to 1984 on machines it leased from Tetra Pak. The court further found that Tetra Pak subsequently ratified CCFD's agency status and actions. The Board attacks these factual determinations. (See *Magnecomp Corp. v. Athene Co.* (1989) 209 Cal.App.3d 526, 536 [257 Cal.Rptr. 278] [existence of agency]; *Siva v. General Tire & Rubber Co.* (1983) 146 Cal.App.3d 152, 159 [194 Cal.Rptr. 51] [ratification].)

The trial court's statement of decision cites (among other things) the leases between Tetra Pak and CCFD, and "[t]he correspondence between the parties" in support of its determinations. With the exception of certain documents and stipulations, and the testimony of a single witness, the evidence at the trial was submitted in the form of "bench books" compiled by counsel and admitted in evidence. When we decided that these books would be useful in addressing certain other arguments made by the parties, we attempted to have them forwarded from the trial court, only to be told that these exhibits had been released to counsel. We then asked the Attorney General, as counsel for the appellant, to produce them. He advised us that all but one of the exhibits "cannot be located at this time" and that both parties "agree that none of the exhibits are needed." This court does not agree.

 Rule one of appellate practice is that "A judgment or order of the superior court is presumed correct. All intendments and presumptions are indulged to support it on matters as to which the record is silent and error must be affirmatively shown." (*Booth v. Robinson, supra*, 147 Cal.3d 371 at p. 377.) One of the specific applications of this general principle is that factual determinations made by the trial court are presumed to be sustained by evidence. (See e.g. *Phillips v. Barton* (1962) 207 Cal.App.2d 488, 492 [24 Cal.Rptr. 527].)

An appellant in the position of the Board, attempting to overcome these presumptions, is expected to produce the exhibits because the ordinary form of record on appeal would not reflect the true state of the evidence received and presumably considered (see Evid. Code, § 664) by the trial court. Only then would the Board be able to rebut the presumptions that the leases and/or correspondence cited by the trial court either include (1) explicit language appointing CCFD Tetra Pak's agent for the purpose of remitting use tax to the Board,[2] or (2) explicit language by Tetra Pak ratifying CCFD's tax payments to the Board. As the Board has failed to carry its burden of demonstrating error, our inquiry ends where it began—with presumably sound factual determinations that have not been shown to be evidentially unsupported.

## III

In 1988 the Legislature enacted a series of statutes collectively entitled the "California Taxpayers' Bill of Rights" (Stats. 1988, chs. 1573-1574, No. 13 West's Cal. Legis. Service, pp. 4426-4438 [No. 6 Deering's Adv. Legis. Service, pp. 6209-6222]). One of its provisions, codified as section 7156, specifies that a taxpayer emerging as the prevailing party from civil litigation with state taxing authorities may be awarded "reasonable litigation costs"—including reasonable attorneys' fees—if the trial court determines that the state's position was "not substantially justified." Tetra Pak was rebuffed in its attempt to use section 7156 to recover a portion of the attorneys' fees it had incurred. The ensuing appeal by Tetra Pak from that denial presents novel questions of both procedure and substance arising from this new statute.

The subject of Tetra Pak claiming attorneys' fees made its first appearance shortly before trial when Tetra Pak noticed a motion *in limine* for an order granting it leave to introduce evidence regarding its claim that a specified lessee of Tetra Pak machines had acted as its agent. Asserting that the Board's position on that issue was "frivolous," Tetra Pak invoked section 7156 as well as Code of Civil Procedure section 128.5 as entitling it to "monetary sanctions." During the course of the trial Tetra Pak again invoked section 7156 when it moved to amend its complaint to include a claim for attorneys' fees. In its proposed statement of decision, Tetra Pak included a paragraph by which the trial court would have (1) granted the motion (2) found that the Board's position was "not substantially justified" (3) declared

---

[2]We do know that Tetra Pak's standard lease for its machines required a lessee to "punctually pay (or cause to be paid) all taxes and assessments lawfully levied against or upon the machines *or their use*." The lease language we have underscored could easily provide the evidentiary basis for the trial court's determination that CCFD acted as Tetra Pak's agent for the purpose of paying use tax.

Tetra Pak the prevailing party, and (4) made an award of attorneys' fees of an unspecified amount to Tetra Pak. This paragraph was deleted by the trial court, which otherwise adopted the proposed statement as its own. The court did not explain this deletion, nor did it insert any alternative text. The judgment (prepared by Tetra Pak and accepted by the court without modification) incorporated the statement of decision attached thereto by reference, and specified that "Tetra Pak shall be entitled to recover all costs incurred in prosecuting this action allowable under . . . Code of Civil Procedure Section 1033.5."

Following entry of the judgment, Tetra Pak filed a memorandum of costs in which it asked for slightly more than $95,000 of the approximately $270,000 in attorneys' fees it had already incurred.[3] The Board's motion to tax this item was granted by the trial court, which noted that its ruling was "without prejudice to Tetra Pak's right to seek such fees on appeal" pursuant to section 7156.[4] The court nevertheless concluded that Tetra Pak was entitled to recover costs of about $11,000. It then made a separate "Order Inserting Costs Into Judgment" in which the court directed that this "shall be and become a part of the Judgment previously entered." Tetra Pak's triple-headed notice of appeal is from (1) "the trial court's denial of its request for attorneys' fees contained in the Motion *In Limine* . . . for Leave to Introduce Evidence Regarding Its . . . Agency Claim pursuant to . . . Code of Civil Procedure Section 128.5" (2) "that portion of the Judgment which purported to deny Tetra Pak its attorneys' fees and costs pursuant to . . . section . . . 7156" and (3) "those portions of the Order . . . granting the [Board's] Motion To Tax Costs relating to the award to Tetra Pak of its attorneys' fees."

---

[3]Tetra Pak was constrained to seek the smaller sum by virtue of section 7156's express command that attorneys' fees "shall not be in excess of seventy-five dollars ($75) per hour" in the absence of exceptional circumstances found by the trial court. (§ 7156, subd. (c)(1)(B)(iii).)

The memorandum also includes these extraordinarily ambiguous parenthetical comments in a footnote: "Tetra Pak claims entitlement to attorneys' fees pursuant to . . . Section 7156 and Code of Civil Procedure Section 128.5. While Tetra Pak is aware that this Court deleted that portion of its Proposed Statement of Decision which awarded Tetra Pak its attorneys' fees, it wishes to preserve its claim to fees on appeal, and for that reason protectively includes the fees here. . . . Tetra Pak does not intend to waive its right to recover on appeal attorneys' fees at the actual amounts billed pursuant to Section 7156 and Code of Civil Procedure Section 128.5."

[4]Opposing that motion, Tetra Pak stated that it had incurred additional attorneys' fees of approximately $21,000. Tetra Pak further advised the trial court: "Even if this Court should conclude that certain of the items of cost (including attorneys' fees) set forth in Tetra Pak's Memorandum of Costs are not recoverable under Code of Civil Procedure Section 1033.5, there nonetheless is ample authority under . . . Section . . . 7156, which comprise[s] part of the Taxpayers' Bill of Rights, and under Code of Civil Procedure Section 128.5, for Tetra Pak to recover these amounts. [¶] . . . Tetra Pak makes these arguments here to preserve them for appeal."

Tetra Pak did not, as required by rule 13 of the California Rules of Court, explain in its briefs why these supposed orders were appealable. Nevertheless, as we explain, Tetra Pak's manifest desire to have reviewed the denial of its request for attorneys' fees can be accommodated. Our explanation is by the numbers assigned to the subjects of Tetra Pak's notice of appeal.

■ (1) Insofar as can be ascertained from the record on appeal, the trial court never did rule on Tetra Pak's request for an award of attorneys' fees pursuant to Code of Civil Procedure section 128.5. The two components of Tetra Pak's *in limine* motion were handled by the trial court at the start of the trial with this ruling: "Attorneys fees will be taken under submission. I will not rule on that now. [¶] But the question of allowing the evidence will be granted." This was no "denial" and thus not an order. (See Code Civ. Proc., § 1003; *Gilman* v. *Contra Costa County* (1857) 8 Cal. 52, 57 [order defined as "the judgment, or conclusion of the Court, upon any motion . . . . It means cases where a Court or Judge grants affirmative relief, and cases where relief is denied."].) In the absence of an order, Tetra Pak's purported appeal therefrom will be dismissed. (See *Johnson* v. *Tago, Inc.* (1986) 188 Cal.App.3d 507, 512, fn. 2 [233 Cal.Rptr. 503].)

■ (2) The major objective of Tetra Pak's appeal is securing review of the denied attorneys' fees requested pursuant to section 7156. The "Taxpayers' Bill of Rights" of which section 7156 is a part was intended by the Legislature "to place guarantees in California law to ensure that the rights, privacy, and property of California taxpayers are adequately protected during the process of the assessment and collection of taxes" (§ 7081). The primary tool for enforcing this goal is allowing taxpayers to recover "reasonable litigation costs" (see §§ 7099, subd. (b)(2), 7156, subd. (a)(2); see also §§ 19420, 26491), a term that is defined in section 7156 to include among other things "[r]easonable fees paid or incurred for the services of attorneys" (§ 7156, subd. (c)(1)(B)(iii)).

Certain difficulties have arisen here by virtue of subdivision (e) of section 7156, which provides: "An order granting or denying an award for reasonable litigation costs under subdivision (a), in whole or in part, shall be incorporated as a part of the decision or judgment in the case and shall be subject to appeal in the same manner as the decision or judgment." The import of this provision appears obvious: The matter of reasonable litigation costs is deemed sufficiently significant to warrant specific mention in the judgment itself.

That express mention is absent from this judgment. Nevertheless, it is clear from the circumstances described above that Tetra Pak's application for reasonable litigation costs was timely presented to the trial court, and was

denied it. It is therefore appropriate to correct the situation by modifying the judgment to include a express denial as contemplated by section 7156. Tetra Pak's appeal from the judgment will be construed to reach this modification. (See Cal. Rules of Court, rule 1(a).)

(3) As an alternative means of securing review, Tetra Pak argues that the orders made in connection with the cost proceedings are appealable as "order[s] made after a judgment" within the meaning of Code of Civil Procedure section 904.1, subdivision (b). Insofar as the orders rejected a claim for attorneys' fees, they would ordinarily be appealable on this basis. (See e.g., *Norman I. Krug Real Estate Investments, Inc.* v. *Praszker* (1990) 220 Cal.App.3d 35, 46 [269 Cal.Rptr. 228].) This general rule, however, must yield in this special instance to the clear command of section 7156 subdivision (e). By specifying that any "order granting or denying an award for reasonable litigation costs . . . shall be incorporated as a part of the . . . judgment in the case and shall be subject to appeal in the same manner as the decision or judgment," subdivision (e) directs that an order of this nature must be in the judgment, and, by logical corollary, only in the judgment. Viewed in this way, subdivision (e) amounts to a special rule of appealability. If the decision on reasonable litigation costs must be embodied in the appealable judgment, it would be illogical to have that identical decision also appealable merely because it is redundantly reflected in an order made after the judgment. Denied an existence independent of the judgment, such an order cannot simultaneously possess an incongruously separate basis of appealability. The general rule of Code of Civil Procedure section 904.1, subdivision (b) must therefore defer to the special rule established by subdivision (e) of section 7156. (Code Civ. Proc., § 1859; *People* v. *Tanner* (1979) 24 Cal.3d 514, 521 [156 Cal.Rptr. 450, 596 P.2d 328].) The orders made subsequent to the judgment thus cannot, in this instance, qualify as appealable pursuant to section 904.1, subdivision (b), and the purported appeals therefrom must also be dismissed.

■ We now turn to the merits of Tetra Pak's appeal from that portion of the judgment which, as modified to comply with subdivision (e), denies Tetra Pak's application for an award of attorneys' fees as reasonable litigation costs pursuant to section 7156.

The pertinent parts of section 7156 provide: "(a) In the case of any civil proceeding which is . . . [¶] Brought by or against the State of California in connection with the determination, collection, or refund of any tax, interest, or penalty . . . , and . . . [¶] Brought in a court of record of this state, the prevailing party may be awarded a judgment for reasonable litigation costs incurred in that proceeding.

".. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(c) For purposes of this section . . . [¶] (2)(A) The term 'prevailing party' means any party to any proceeding described in subdivision (a) (other than the State of California . . .) which . . . [¶] Establishes that the position of the State of California in the civil proceeding was not substantially justified, and . . . [¶] Has substantially prevailed with respect to the amount in controversy, or . . . [¶] Has substantially prevailed with respect to the most significant issue or set of issues presented. . . ."

As evidenced by its use of the permissive "may" (see § 16) the Legislature cannot have intended section 7156 to be inflexible in application. This conclusion is corroborated by the crucial phrase "not substantially justified," which, although it has never been construed in this state,[5] has an easily comprehended meaning.

Considering the term "substantially," our Supreme Court deemed it "a relative term, its measure to be gauged by all the circumstances surrounding the matter in reference to which the expression has been used." (*Atchison etc. Ry. Co.* v. *Kings Co. Water Dist.* (1956) 47 Cal.2d 140, 144 [302 P.2d 1].)[6] By challenging the denial of its application for attorneys' fees, Tetra

---

[5]The phrase is enjoying quite a vogue as the benchmark for sanctions (e.g. Code Civ. Proc., §§ 1987.2, 2017, subd. (d), 2023, subd. (b)(1), 2024, subd. (e), 2030, subd. (k) [civil discovery]; cf. Code Civ. Proc., § 177.5 [violation of court order "done without good cause or substantial justification"]), particularly if government is involved (e.g. Code Civ. Proc., § 1028.5, subd. (a) [any "state regulatory agency[] involving the regulatory functions of a state agency as applied to a small business of licensee"]; Gov. Code, §§ 11507.7, subd. (i) [administrative or court proceedings involving state boards, commissions, and agency officers], 19574.2, subd. (i) [administrative or court proceedings involving State Personnel Board]; Veh. Code, § 3050.2, subd. (b) [noncompliance with discovery procedures before the New Motor Vehicle Board]).

[6]Decisions from all parts of the nation parallel this flexibility. In Hawaii a good faith dispute can be equated with "substantial justification." (*Lothspeich* v. *Sam Fong* (Hawaii Ct.App. 1985) 711 P.2d 1310, 1315.) At the other end of the country, the concept of "without substantial justification" is treated in Maryland as equivalent to bad faith. (*Legal Aid* v. *Bishop's Garth* (1988) 75 Md.App. 214 [540 A.2d 1175, 1179].) In Boston, the government has a "substantially justified" position if it litigates and loses issues of first impression, thus absolving it of paying attorneys' fees to the opposing party. (*De Allende* v. *Baker* (1st Cir. 1989) 891 F.2d 7, 12-13.) For the United States Supreme Court, a particular species of "substantial" claim must not be " 'absolutely devoid of merit,' . . . 'obviously frivolous,' . . . 'no longer open to discussion,' . . . [or] 'obviously without merit' . . . because 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy.' " (*Hagans* v. *Lavine* (1974) 415 U.S. 528, 536-537 [39 L.Ed.2d 577, 587,588, 94 S.Ct. 1372], citations omitted.) The same court has more recently stated that the government's "position can be justified even though it is not correct, and we believe it can be substantially (*i.e.*, for the most part) justified if a reasonable person could

Pak thus in effect must contend that the trial court abused its discretion in refusing to rule that the Board's position was not substantially justified. Tetra Pak can prevail on its contention only by demonstrating that the trial court "exceeded the bounds of reason" on a record where all reasonable inferences are against the actions of the Board and the ruling of the trial court. (See *Shamblin* v. *Brattain* (1988) 44 Cal.3d 474, 478-479 [243 Cal.Rptr. 902, 749 P.2d 339].) Just as the Board was unable to sustain its burden of demonstrating error and overcoming presumptions in favor of the judgment when the Board failed to produce the trial evidence requested by this court (see part II, *ante*), the identical omission by Tetra Pak also dooms its appeal. In the absence of the total record, the possibility of any inference favorable to the trial court's ruling cannot be entirely eliminated. There is consequently no clear showing of abuse. (See *Shamblin* v. *Brattain, supra,* 44 Cal.3d 474, 478; *Booth* v. *Robinson, supra,* 147 Cal.App.3d 371 at p. 377.)

The purported appeals from the orders discussed in part III, *ante,* are dismissed. The judgment is modified by inserting therein the following provision: "Plaintiff's application for an award of attorneys' fees pursuant to Revenue and Taxation Code section 7156 is denied." As so modified, the judgment is affirmed. Tetra Pak shall recover its costs on the Board's appeal. The Board shall recover its costs on Tetra Pak's cross-appeal.

Perley, J., and Reardon, J., concurred.

think it correct, that is, if it has a reasonable basis in law and fact." (*Pierce* v. *Underwood* (1988) 487 U.S. 552, 566, fn. 2 [101 L.Ed.2d 490, 505, 108 S.Ct. 2541].)