[No. B177558. Second Dist., Div. Seven. Dec. 7, 2005.]

DAN J. AGNEW, Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

## Counsel

Mandel & Norwood, S. Jerome Mandel and Lilly Lewis for Plaintiff and Appellant.

Bill Lockyer, Attorney General, W. Dean Freeman, Raymond B. Jue and Felix E. Leatherwood, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**JOHNSON, J.**—In this sales tax refund case a taxpayer who prevailed in litigation against the State Board of Equalization appeals from the court's denials of his requests for costs and attorney fees. We conclude the taxpayer is entitled to his costs as the prevailing party under Code of Civil Procedure section 1032, subdivision (b). Accordingly, we reverse the portion of the judgment which denies him an award of costs under Code of Civil Procedure section 1032, subdivision (b), as possibly augmented by Code of Civil Procedure section 998, and remand for further proceedings. We affirm the judgment and postjudgment orders in all other respects.

## FACTS AND PROCEEDINGS BELOW

Appellant Dan J. Agnew is a resident of Washington State. In 1981 Agnew bought a thoroughbred yearling in Kentucky he named Desert Wine. Before Desert Wine had ever raced, Agnew sold a one-half interest in the horse to Fred Sahadi. They agreed Agnew would manage Desert Wine's racing career and, if Desert Wine was successful enough to have stallion prospects, Sahadi would then manage the horse's breeding career at his Cardiff Stud Farm in California.

Desert Wine's racing career was very successful. Given the horse's success and future prospects, Agnew and Sahadi decided to syndicate Desert Wine, combining elements of both racing and breeding syndications.

After syndication, ownership of Desert Wine was represented by 40 "fractional interests"—30 initially owned by Agnew and Sahadi as tenants in common, five owned by Agnew and five owned by Sahadi. Of these 30 fractional interests, 26.5 were eventually sold to outside investors or shareholders. Of the 26.5 fractional interests sold 11 were sold while Desert Wine was outside California in Washington State; 14.5 were sold while Desert Wine was in California; and one share was sold in 1985.

Agnew did not file a California sales or use tax return regarding the Desert Wine transactions. However, respondent State Board of Equalization (Board) discovered the syndication in a 1986 sales tax audit of Sahadi's Cardiff Stud Farm. Sahadi provided the Board with one copy of the syndication agreement pertaining to one of Sahadi's five individually owned fractional interests in Desert Wine. However, because the Board was auditing Sahadi and the agreement stated the fractional interest identified in the agreement (fractional

interest No. 37 of 40) belonged to Sahadi, the Board did not concern itself with Agnew at the time, and Agnew had no knowledge of the Board's action regarding Desert Wine.

The Board did not contact Agnew about his potential California tax liability on sales of syndication shares in Desert Wine until 1992. In April 1992, the Board served Agnew with a notice of determination assessing sales tax in the amount of $516,750 "for unreported taxable syndication shares of the race horse Desert Wine" plus interest of $516,590—an amount nearly equal to the tax itself—for a total of $1,033,340. Agnew challenged the determination through administrative proceedings. He filed a petition for redetermination, requested an appellate conference, and sought a formal hearing before the Board when his earlier efforts were unsuccessful.

In 1995, the Board issued a new notice of determination concluding Agnew had been properly assessed $516,750 in sales tax on all 26.5 fractional interests sold plus $708,649 in interest which had continued to accrue. The Board granted Agnew relief from a $51,000 penalty.

Agnew paid the sales tax of $516,750 under protest and filed a claim for refund. He did not pay the interest amount claimed to be due. Because the Board maintained he was required to pay both the tax and interest in order to pursue his refund claim, Agnew filed a declaratory relief action to challenge the validity of the Board's policy of requiring payment of interest as well.[1] Agnew appealed from the trial court's dismissal of his action after it sustained the Board's demurrer. This court reversed, finding neither constitutional nor statutory authority for the Board's policy of requiring payment of both tax and accrued interest as a prerequisite to pursuing a claim for refund. The California Supreme Court granted review.[2]

In the meantime, in 1996, Agnew filed an action seeking a refund of the $516,750 sales tax he had paid. The trial court again dismissed Agnew's complaint, finding he had failed to exhaust his administrative remedies by failing to prepay the accrued interest on the assessed tax deficiency.[3] On Agnew's appeal, this court again reversed for the reasons stated in *Agnew I*. The California Supreme Court granted review in *Agnew II* as well.[4]

---

[1] *Agnew v. State Bd. of Equalization* (Super. Ct. L.A. County, 1996, No. BC137289.)

[2] *Agnew v. State Bd. of Equalization* (*Agnew I*) (1997) 55 Cal.App.4th 1479 [64 Cal.Rptr.2d 771], review granted October 1, 1997, S063339.

[3] *Agnew v. State Bd. of Equalization*, Super. Ct. L.A. County, 1996, No. BC153854.

[4] *Agnew v. State Bd. of Equalization* (*Agnew II*) (Dec. 8, 1997, B109418) (nonpub. opn.), review granted February 28, 1998, S067358.

While both cases were pending before our Supreme Court, the Board levied on Agnew's account at Santa Anita Race Track and collected $8,025. Because the Board had obtained a number of other liens Agnew paid another $645,792 in satisfaction of the total interest amount (because Sahadi had paid $60,000 which was applied to the interest liability on the Desert Wine transaction).[5]

In October 1998, Agnew submitted a claim for refund of the entire amount paid. The Board failed to act on this claim. In August 1999, our Supreme Court affirmed our decision in *Agnew I*. The Supreme Court held payment of accrued interest on a tax deficiency is not a prerequisite to either an administrative refund claim or a subsequent action for refund of taxes.[6] In light of its decision, the Supreme Court dismissed review of *Agnew II* and remanded the case to this court. We entered a remittitur and our decision became final.

On remand, the trial court awarded Agnew over $77,000 in attorney fees under the private attorney general doctrine.[7]

In light of the Supreme Court's decision, Agnew requested the Board to refund immediately the full amount of interest he had paid. When the Board refused, Agnew filed an amended complaint, seeking to recover the $516,750 sales tax assessment plus the entire amount of interest the Board retained.

After a five-day bench trial, the trial court entered a decision and judgment in the Board's favor. The trial court found Agnew was liable for sales tax on the sale of all 26.5 syndication shares.

Agnew appealed from the judgment. We affirmed the judgment in part, reversed in part, and remanded with directions. On appeal, as he had in the

---

[5] The Board had also filed liens against Sahadi's property. The Board's actions apparently prompted Sahadi to file suit against Agnew in San Luis Obispo County in 1995. Ultimately, Agnew and Sahadi agreed to a stipulated judgment in which Sahadi agreed (among other things) to pay $175,000 in consideration for Agnew's agreement to pay the entire sales tax and interest liability claimed to be owed. Agnew, for his part, would accept the obligation for paying the claimed tax and interest due; have the sole right to pursue his refund claim against the Board; and the sole right to any payments due from the Board as a result of his refund action. Under the agreement the Board agreed to release all liens once it received full payment of the claimed tax deficiency and accrued interest alleged to be owing.

[6] *Agnew v. State Bd. of Equalization* (1999) 21 Cal.4th 310, 314 [87 Cal.Rptr.2d 423, 981 P.2d 52].

[7] Code of Civil Procedure section 1021.5.

trial court, Agnew argued sale of syndicate shares of Desert Wine was not a taxable event. We disagreed. We rejected Agnew's argument shareholders or investors acquired only tax exempt intangible contract rights to share in racing profits and the future right to name a mare for breeding. We found under existing law as well as the syndication agreement, syndicate shareholders acquired ownership to tangible property and thus transfer of title to this tangible personal property created a taxable event. We also rejected Agnew's alternative arguments transfer of a syndicate share should be treated as the equivalent of a nontaxable transfer of intangible personal property comparable to an investment contract interest, a limited partnership interest or the sale of a service. We similarly rejected Agnew's argument sale of a single horse to a single syndicate qualified as a tax-exempt "occasional sale."

On the other hand, we found other of Agnew's arguments had merit. We found Agnew had been improperly taxed on Sahadi's receipts. We also found the Board had improperly assessed a sales, rather than a use, tax on the 11 shares purchased while Desert Wine was out of state in Washington. In light of the Board's concession it had never assessed or determined a use tax to be owing we found Agnew was thus entitled to a refund of the tax paid on those 11 shares. Moreover, we found the Board knew or should have known its policy of requiring payment of interest as a prerequisite to pursuing a claim for refund was invalid, once the Supreme Court's decision in *Agnew I* became final. We thus concluded Agnew was entitled to be restored to the position he would have been in had the Board not retained the interest portion of Agnew's payments after the date the Supreme Court's decision became final. We remanded the matter for the trial court to calculate the amounts due and owing to Agnew in accordance with our opinion. We also directed the trial court to decide the remaining unresolved issues whether Agnew was properly taxed on the first two sales in the series, on the half-share sold for resale, and on the share sold in 1985 and outside the tax year in question. We ordered each side to bear its own costs on appeal.

On remand, the parties reached an agreement just prior to the scheduled trial date. The parties stipulated to a judgment in favor of Agnew for $1,074,280, or nearly 90 percent of the over $1.2 million he had paid in tax and interest. On May 3, 2004 the parties recited the terms of their stipulated agreement on the record in open court. The court ultimately signed and entered judgment on the parties' stipulation on May 29, 2004.

On May 28, 2004 Agnew filed a memorandum of costs seeking $51,760.49 in costs, including $45,917 in expert witness fees.[8] On the same date Agnew filed a noticed motion seeking approximately $400,000 in attorney fees under the authority of Revenue and Taxation Code section 7156.[9] In his motion Agnew argued he was the "prevailing party" in the action against the Board because he had established the statutory criteria of (1) having "substantially prevailed with respect to the amount in controversy" and by (2) showing the Board's position in the litigation was "not substantially justified." In his memorandum in support of his request for fees, Agnew stated he was additionally justified in claiming costs, expert witness fees and attorney fees because the Board had failed to accept his Code of Civil Procedure section 998 offer to settle the matter pretrial for $500,000.[10]

The Board vigorously opposed Agnew's motion for attorney fees and costs. The Board asserted, among other things: (1) Agnew had improperly developed a scheme to evade payment of sales tax on the Desert Wine transactions; (2) Agnew had failed to disclose to the trial and appellate courts he had assumed Sahadi's tax liability as part of the settlement of their litigation; (3) Agnew remained liable for those shares sold while Desert Wine was out of state; (4) nothing in the Supreme Court's opinion directed the Board to return interest payments already paid; (5) the Board was not required to issue a separate notice of determination for use tax; and (6) Agnew's unreasonable behavior during the litigation did not justify an upward adjustment in the statutory hourly attorney fee rate or justify any award at all.

The Board also filed a motion to strike or tax Agnew's costs as either unauthorized or unreasonable. The Board argued the general cost statutes in the Code of Civil Procedure were inapplicable in any event. The Board asserted Revenue and Taxation Code section 7156 exclusively governed entitlement to costs and fees in tax-related litigation.

The hearing on Agnew's request for attorney fees and costs under Revenue and Taxation Code section 7156 came on for hearing on June 24, 2004. The court found Agnew was not the "prevailing party" within the meaning of

---

[8] Agnew later filed an amended memorandum of costs seeking a total of $46,217.49.

[9] Section 7156 of the Revenue and Taxation Code was enacted as part of the so-called California Taxpayers' Bill of Rights. It grants trial courts the power to award attorney fees and costs to parties who have prevailed in tax-related litigation where the state's position was "not substantially justified."

[10] Section 998 of the Code of Civil Procedure specifies if a plaintiff's offer is not accepted and the defendant fails to obtain a more favorable judgment then the court in its discretion may require the defendant to pay a reasonable sum to cover the plaintiff's reasonable and necessary costs for expert witnesses. (Code Civ. Proc., § 998, subd. (d).)

Revenue and Taxation Code section 7156. The court found reasonable minds could and did differ regarding the merits of the Board's position during the litigation and thus Agnew had not established the necessary factual predicate of proving the Board's actions had not been "substantially justified." Accordingly, the court denied Agnew's request for costs and fees under Revenue and Taxation Code section 7156.[11]

The hearing on Agnew's motion for costs and the Board's motion to tax or strike costs under the general cost provisions of the Code of Civil Procedure came on for hearing a month later on July 21, 2004. Even if he was not the "prevailing party" under Revenue and Taxation Code section 7156, Agnew argued he was the "prevailing party" with the net monetary recovery under Code of Civil Procedure sections 1028 and 1032[12] and was thus entitled to costs as a matter of right as augmented by Code of Civil Procedure section 998 to include expert witness fees. The court took the matter under submission.

On July 27, 2004, and while the court's ruling on the cost motions remained pending, Agnew filed another motion for attorney fees and costs under Code of Civil Procedure section 998. In this motion, Agnew claimed he was entitled to an award of attorney fees as well, because in this case an award of attorney fees was authorized by statute, namely, Revenue and Taxation Code section 7156. Even if he was not, Agnew argued he was entitled to his costs, including expert witness fees, because the Board had failed to accept his pretrial offer of settlement and had failed to achieve a more favorable result at trial.

On August 16, 2004 the court denied Agnew's request for costs, finding section 7156 of the Revenue and Taxation Code was specific to and controlled cost awards in tax litigation. The court thus found this more specific statute precluded an award of costs under the general cost statutes of the Code of Civil Procedure.

A few weeks later on August 30, 2004 the trial court denied Agnew's second motion for costs and fees requested under Code of Civil Procedure

---

[11] Orders regarding costs and fees under Revenue and Taxation Code section 7156 must be incorporated into the judgment. (Rev. & Tax. Code, § 7156, subd. (e); see also *Lennane v. Franchise Tax Bd.* (1996) 51 Cal.App.4th 1180, 1185, fn. 2 [59 Cal.Rptr.2d 602]; *Tetra Pak, Inc. v. State Bd. of Equalization* (1991) 234 Cal.App.3d 1751, 1762 [286 Cal.Rptr. 529].)

[12] Code of Civil Procedure section 1028 pertains to cost awards against the state. This section provides in pertinent part: "Notwithstanding any other provisions of law, when the State is a party, costs shall be awarded against it on the same basis as against any other party . . . ."

Code of Civil Procedure section 1032, subdivision (b) provides: "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding."

section 998. The court found Agnew's second motion presented "nothing new" and denied it as an impermissible and untimely motion for reconsideration.

Agnew appeals from the adverse rulings denying his requests for fees and costs.[13]

## DISCUSSION

I. *THE COURT'S DENIAL OF COSTS AND FEES UNDER REVENUE AND TAXATION CODE SECTION 7156 WAS NOT AN ABUSE OF DISCRETION.*

Agnew contends the court erred in failing to award him costs and attorney fees under Revenue and Taxation Code section 7156. He asserts it is undisputed he "substantially prevailed with respect to the amount in controversy." He thus notes the only question was whether he established the Board's litigation position was "not substantially justified" to entitle him to an award of costs and fees under this section. Because he argues the standard of review is de novo Agnew's brief on appeal is primarily devoted to convincing this court to reweigh the evidence and find the Board's position in this litigation was "not substantially justified."

In 1988 the Legislature enacted a series of statutes collectively entitled the "California Taxpayers' Bill of Rights." One of its provisions, codified as Revenue and Taxation Code section 7156, specifies a party emerging as the prevailing party from civil litigation with state taxing authorities may be awarded "reasonable litigation costs"—including reasonable attorney fees—if the trial court determines that the state's position was "not substantially justified."

"Prevailing party" in Revenue and Taxation Code section 7156, subdivision (c)(2)(A) means "any party to any proceeding described in subdivision (a) (other than the State of California or any creditor of the taxpayer involved) which—

"(i) Establishes that the position of the State of California in the civil proceeding was not substantially justified, and

"(ii)(I) Has substantially prevailed with respect to the amount in controversy, or

---

[13] Agnew filed two separate appeals from the court's orders which we agreed to consolidate for review.

"(II) Has substantially prevailed with respect to the most significant issue or set of issues presented."

(2)  " 'California cases have defined a "substantially justified" position to mean one which is justified to a degree that would satisfy a reasonable person, or " 'has a " 'reasonable basis both in law and fact.' " " ' " . . .' (*Wertin v. Franchise Tax Bd.* (1998) 68 Cal.App.4th 961, 977 [80 Cal.Rptr.2d 644], citing *Lennane v. Franchise Tax Bd.* [(1996)] 51 Cal.App.4th [1180], at pp. 1188–1189.) '[T]he use of the word "reasonable" in explaining "substantially justified" implies an objective standard that does not depend on an analysis of the subjective motivations of the government in taking the position it did.' (*Wertin, supra,* 68 Cal.App.4th at p. 978.) In this regard, we stress that the [taxing agency's] position need not be the one accepted by the trier of fact. So long as the position is one that a reasonable person could think is correct, it may be substantially justified even in the face of conflicting evidence. . . ."[14]

The trial court concluded Agnew failed to establish the Board's litigation position was "not substantially justified" within the meaning of Revenue and Taxation Code section 7156. We review the court's ruling for abuse of discretion.[15] Thus, Agnew can prevail on his contention the Board's litigation

---

[14] *Fujitsu IT Holdings, Inc. v. Franchise Tax Bd.* (2004) 120 Cal.App.4th 459, 487 [15 Cal.Rptr.3d 473].

[15] *Fujitsu IT Holdings, Inc. v. Franchise Tax Bd., supra,* 120 Cal.App.4th 459, 488 ("To the extent that an award of attorney fees will act as a disincentive to the FTB to take positions that it cannot substantially justify, we believe such an award is well within the court's discretion."); *Wertin v. Franchise Tax Bd.* (1998) 68 Cal.App.4th 961, 970 [80 Cal.Rptr.2d 644] ("We review the trial court's order awarding attorneys' fees under [the] Revenue and Taxation Code . . . for abuse of discretion."); *Lennane v. Franchise Tax Bd., supra,* 51 Cal.App.4th 1180, 1189 ("Abuse of discretion is our review standard for that determination."); *McDonnell Douglas Corp. v. Franchise Tax Bd.* (1994) 26 Cal.App.4th 1789, 1799 [33 Cal.Rptr.2d 129] ("We find no abuse of discretion by the trial court in denying MDC's motion for attorney fees."); *Tetra Pak, Inc. v. State Bd. of Equalization, supra,* 234 Cal.App.3d 1751, 1755 ("We conclude that this commonly employed statutory language [not substantially justified] vests the trial court with discretion to make such an award subject to reversal only for abuse.").

Agnew urges this court to employ a de novo standard of review. However, the decisions he cites in support of a de novo standard of review are inapposite. Each presented pure questions of law—the situation in which de novo review is appropriate. In both *Carver v. Chevron, U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142 [118 Cal.Rptr.2d 569] and *Exxess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698, 705 [75 Cal.Rptr.2d 376] the appellate court was required not only to interpret the meaning of a statute, but was also required to interpret terms in the parties' contracts to determine entitlement to attorney fees—questions of law appropriate for de novo review. By contrast in the present case, the question whether the trial court abused its discretion in failing to find the Board's litigation position was "not substantially justified" does not involve the proper interpretation of either a statute or a contract to warrant de novo review.

position was "not substantially justified" only by demonstrating the trial court's decision finding otherwise "exceeded the bounds of reason."[16]

There can be no serious dispute Agnew satisfied one of the statutory elements for an award of costs and fees under Revenue and Taxation Code section 7156 by substantially prevailing with respect to the amount in controversy. Agnew succeeded in securing a judgment representing a refund of almost 90 percent of the amounts he paid in sales tax and accrued interest. The question then is whether the trial court erred in finding Agnew had failed to establish the Board's position was "not substantially justified." We conclude the record contains substantial evidence which supports the trial court's finding the Board had justification for taking many of the positions it took in this litigation.

Our conclusions and analyses in *Agnew II* are sufficient to support the trial court's ruling. The primary purpose of this litigation was to determine whether sales of syndicate shares in Desert Wine constituted taxable events. Agnew argued these sales were tax exempt. During the course of the litigation he presented numerous theories under which he claimed these sales should be tax exempt. In *Agnew II* we found Agnew's sales of syndicate shares in Desert Wine were in fact taxable. In arriving at this conclusion we rejected each of Agnew's proffered theories for tax-exempt status. Thus, the principal point of the litigation resulted in favorable rulings for the Board.

It is true, as Agnew argues, the Board took some indefensible, if not unreasonable, positions in other matters.[17] For example, the Board did not prevail on its claimed right to retain the accrued interest Agnew paid under protest after the Supreme Court definitively, and unanimously, held the Board had neither a statutory nor constitutional right to require payment of the accrued interest in the first instance. The Board had claimed, and continues to claim, return of the funds would have constituted an "illegal gift of public funds." The Board also lost on its argument it was still entitled to collect a tax on shares sold while Desert Wine was out of state although the Board had concededly never noticed a determination of the applicable *use* tax due.[18] In the final analysis each side prevailed on certain matters, demonstrating the

---

[16] *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478–479 [243 Cal.Rptr. 902, 749 P.2d 339]; see *Tetra Pak, Inc. v. State Bd. of Equalization, supra,* 234 Cal.App.3d 1751, 1764.

[17] Unlike the situation in *Fujitsu IT Holdings, Inc. v. Franchise Tax Bd., supra,* 120 Cal.App.4th 459, 487, footnote 13, Agnew did not limit his request for fees and costs to only those discrete issues which most clearly lacked legal and factual support.

[18] *Agnew v. State Bd. of Equalization, supra,* 21 Cal.4th 310, 315, footnote 3 ("The sales and use taxes 'are mutually exclusive but complementary, and are designed to exact an equal tax based on a percentage of the purchase price of the property in question' [citation], but the sales tax is levied on freedom to purchase while the use tax is on the enjoyment of the item purchased.").

legal merits of neither side's arguments were entirely wrong nor entirely right—as an objective matter.

That the litigation position these parties took in this case was nearly equally balanced is further demonstrated by this court's disposition of *Agnew II*. While normally a prevailing party on appeal is entitled to costs on appeal, this court was persuaded neither side was the clear winner, and significantly, ordered each side to bear its own costs on appeal.[19]

As the trial court summarized its decision to deny Agnew an award of costs and fees under Revenue and Taxation Code section 7156: "With each party prevailing on some issues at each stage of the litigation, this Court·must conclude that reasonable minds could and did differ. The Plaintiff has failed to show that the State's position was without reasonable justification." We find the court's conclusion within the bounds of reason based on all the evidence and accordingly find no abuse.[20]

## II. *AGNEW WAS ENTITLED TO AN AWARD OF COSTS UNDER THE GENERAL COST PROVISIONS OF THE CODE OF CIVIL PROCEDURE.*

To recall, Agnew sought an award of costs under the general cost statutes of the Code of Civil Procedure. He contended, even if he was not the prevailing party for purposes of an award of costs and fees under Revenue and Taxation Code section 7156, he was nevertheless the party with the net monetary recovery and thus the "prevailing party" for an award of costs and expert witness fees under Code of Civil Procedure sections 1032, 1028 and 998. The trial court denied Agnew's request, finding Revenue and Taxation Code section 7156 expressly disallowed an award of costs to a party in tax-related litigation who failed to establish the state's litigation position was unreasonable.

The Board defends the court's ruling, arguing section 7156 of the Revenue and Taxation Code "covers the field" and precludes an award of costs or fees

---

[19] California Rules of Court, rule 27(a)(1) states "[e]xcept as provided in this rule, the party prevailing in the Court of Appeal in a civil case is entitled to costs on appeal." However, the rule provides some leeway in the event no party has clearly prevailed in the Court of Appeal. Rule 27(a)(4) of the California Rules of Court provides "[i]f the interests of justice require it, the court may award or deny costs as it deems proper."

[20] *Johns v. City of Los Angeles* (1978) 78 Cal.App.3d 983, 987 [144 Cal.Rptr. 629] (a discretionary decision should be the product of a discriminating judgment within the bounds of reason).

in any manner not authorized by this section. The Board argues Agnew thus was limited to bringing a motion for costs and attorney fees under Revenue and Taxation Code section 7156, and claims cost statutes in the Code of Civil Procedure "have no application to suits for refund of tax."[21] We are not persuaded.

Code of Civil Procedure section 1028 pertains to cost awards against the state. This section provides in pertinent part: *"Notwithstanding any other provisions of law*, when the State is a party, costs shall be awarded against it on the same basis as against any other party . . . ."[22]

■ Similarly, Code of Civil Procedure section 1032, subdivision (b) provides: *"Except as otherwise expressly provided by statute*, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding."[23] The definition of "prevailing party" for purposes of this section includes "the party with a net monetary recovery."[24] The fact Agnew is the party with the net monetary recovery is not in dispute. He is thus the "prevailing party" for purposes of Code of Civil Procedure section 1032.

Code of Civil Procedure section 998 provides in pertinent part: "If an offer made by a plaintiff is not accepted and the defendant fails to obtain a more favorable judgment or award in any action or proceeding . . . the court or arbitrator, in its discretion, may require the defendant to pay a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the plaintiff, in addition to plaintiff's costs."[25] During the pretrial stage, Agnew made a formal offer to settle under this section for a sum of $500,000 with each side bearing its own costs and attorney fees. The Board

---

[21] Citing *Woosley v. State of California* (1992) 3 Cal.4th 758, 789 [13 Cal.Rptr.2d 30, 838 P.2d 758] (actions for tax refunds must be brought in the manner prescribed by the Legislature); *Kuykendall v. State Bd. of Equalization* (1994) 22 Cal.App.4th 1194, 1204 [27 Cal.Rptr.2d 783] (the only remedy for recovering taxes asserted to have been incorrectly paid is to comply with statutory provisions for obtaining a refund).

The particular issue under scrutiny here is a postjudgment motion for *costs*. It is not a *suit for refund* of taxes. The suit for refund concluded with the stipulated judgment.

[22] Italics added.

[23] Italics added.

[24] Code of Civil Procedure section 1032, subdivision (a)(4).

[25] Code of Civil Procedure section 998, subdivision (d).

did not accept Agnew's offer. Accordingly, under the authority of Code of Civil Procedure section 998 Agnew was entitled to be considered for a discretionary award of expert witness fees as well.

■ Because Code of Civil Procedure section 1032 grants a "prevailing party" the right to recover costs "[e]xcept as otherwise expressly provided by statute," we must determine whether Revenue and Taxation Code section 7156 contains an "express" exception. "As with other disputes over statutory interpretation, we must attempt to effectuate the probable intent of the Legislature, as expressed through the actual words of the statutes in question. [Citations.] ' "Our first step [in determining the Legislature's intent] is to scrutinize the actual words of the statute, giving them a plain and common-sense meaning." ' "[26]

■ When the Legislature intends to restrict the recovery of costs or fees it knows how to express such restriction. Revenue and Taxation Code section 7156 itself provides such an example by expressly preventing either the state or a creditor of a taxpayer from qualifying as a "prevailing party."[27] However, Revenue and Taxation Code section 7156 contains no express exception disallowing a prevailing taxpayer from recovering costs except under its provisions. The statute is silent in this regard. Accordingly, based on the actual words of the statute, we conclude Revenue and Taxation Code section 7156 contains no "express" exception to the general rule permitting a taxpayer as a prevailing party to recover his costs under Code of Civil Procedure section 1032, subdivision (b).

■ Although there is some duplication in the various cost provisions, we conclude Revenue and Taxation Code section 7156 complements, rather than supplants, the more general cost statutes of the Code of Civil Procedure. Under the cost-shifting provision of Revenue and Taxation Code section 7156 a prevailing taxpayer is eligible for costs, expenses—and attorney fees. On the other hand, if the taxpayer fails to satisfy the criteria of section 7156, a prevailing taxpayer would only be entitled to an award of costs under the general rule of Code of Civil Procedure section 1032, subdivision (b), as possibly augmented by Code of Civil Procedure section 998.

---

[26] *Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 990 [73 Cal.Rptr.2d 682, 953 P.2d 858].

[27] Revenue and Taxation Code section 7156, subdivision (c)(2)(A).

This principle is illustrated by the decision in *Murillo v. Fleetwood Enterprises, Inc.*[28] In *Murillo* buyers of a new motor home sued the sellers alleging violations of the Song-Beverly Consumer Warranty Act, the so-called lemon law.[29] As in the present case, the act included a cost-shifting statute entitling the prevailing *buyer* the right to recover "costs and expenses, including attorney's fees," but was silent regarding the right of prevailing *sellers* to recover their costs and fees.[30] The trial court entered judgment on the jury's verdict in favor of the sellers and awarded the sellers their costs as the prevailing parties under Code of Civil Procedure section 1032, subdivision (b). Because the buyers had rejected the sellers' settlement offer, the trial court exercised its discretion to award the sellers their expert witness fees under Code of Civil Procedure section 998. The trial court denied the buyers' request to strike or tax the sellers' costs on the ground the general cost provisions conflicted with the more specific cost provision applicable to actions under the act. The Court of Appeal affirmed and the Supreme Court affirmed the Court of Appeal.[31]

The Supreme Court found no conflict between the two statutes. The court explained Code of Civil Procedure section 1032 applies " '[e]xcept as otherwise expressly provided by statute,' " and Civil Code section 1794, subdivision (d), the cost-shifting statute in the act, did not expressly disable Code of Civil Procedure section 1032 from applying to a seller. The *Murillo* court reasoned, "any suggestion that prevailing sellers are prohibited from recovering their costs is at most *implied*. Accordingly, based on the plain meaning of the words of the statutes in question, we conclude Civil Code section 1794(d) does not provide an 'express' exception to the general rule permitting a seller, as a prevailing party, to recover its costs under section 1032(b)."[32]

The *Murillo* court also rejected the buyers' argument, argued here by the Board and adopted by the trial court, the two cost statutes were redundant, in conflict, and thus the more specific statute should prevail. The court explained, "even were we to agree some degree of redundancy exists between the two statutes, such redundancy would be insufficient to satisfy the requirement of an express exception to the general rule regarding the recovery of

---

[28] *Murillo v. Fleetwood Enterprises, Inc., supra,* 17 Cal.4th 985.
[29] Civil Code section 1790 et seq.
[30] Civil Code section 1794, subdivision (d).
[31] *Murillo v. Fleetwood Enterprises, Inc., supra,* 17 Cal.4th 985, 988–989.
[32] *Murillo v. Fleetwood Enterprises, Inc., supra,* 17 Cal.4th 985, 991.

costs by the prevailing party."[33] The court also noted the two statutes were not inconsistent because they could be reconciled. "On the one hand, if a buyer should prevail in an action under the Act, he or she is entitled to costs, expenses, and attorney fees as set forth in Civil Code section 1794(d). On the other hand, if a seller should prevail in an action brought under the Act, it is entitled to costs under section 1032(b). We thus perceive no conflict or inconsistency between Civil Code section 1794 and Code of Civil Procedure section 1032."[34]

The *Murillo* court similarly found the cost and fee provision in the act did not preclude the award of expert witness fees awarded under Code of Civil Procedure section 998. "Having concluded Civil Code section 1794(d) fails to set forth an express exception to the general cost-recovery rule set forth in section 1032(b), we likewise conclude it provides no exception to the provisions of section 998. Section 998 explicitly states that it 'augment[s]' section 1032(b). Thus, the requirements for recovery of costs and fees under section 998 must be read in conjunction with section 1032(b), including the requirement that section 998 costs and fees are available to the prevailing party '[e]xcept as otherwise *expressly* provided by statute.' "[35]

So too in the case at bar, nothing in Revenue and Taxation Code section 7156 *expressly* disallows an award of costs to a prevailing taxpayer under Code of Civil Procedure section 1032, subdivision (b). Accordingly, as the prevailing party Agnew was entitled to an award of costs, and possibly expert witness fees as well, under the general cost provisions of the Code of Civil Procedure even if he did not satisfy the Revenue and Taxation Code section 7156 criteria which would have entitled him to attorney fees as well as costs and expert witness fees.[36]

We will remand the matter for the trial court to determine an appropriate award of costs to Agnew as the prevailing party under Code of Civil Procedure section 1032, subdivision (b), as possibly augmented by an award of expert witness fees under Code of Civil Procedure section 998 in the court's discretion.

---

[33] *Murillo v. Fleetwood Enterprises, Inc., supra*, 17 Cal.4th 985, 992.

[34] *Murillo v. Fleetwood Enterprises, Inc., supra*, 17 Cal.4th 985, 992.

[35] *Murillo v. Fleetwood Enterprises, Inc., supra*, 17 Cal.4th 985, 1000.

[36] The taxpayers in *Lennane v. Franchise Tax Bd., supra*, 51 Cal.App.4th 1180, 1185 and *Tetra Pak, Inc. v. State Bd. of Equalization, supra*, 234 Cal.App.3d 1751, 1760 failed to establish they were entitled to an award of costs and attorney fees under Revenue and Taxation Code section 7156. Nevertheless, and although not an issue in dispute in either case, the trial courts awarded, and the appellate courts affirmed, uncontested costs to the prevailing taxpayers under the general cost provisions.

III. *AGNEW HAS FAILED TO ESTABLISH HE WAS ENTITLED TO AN AWARD OF ATTORNEY FEES UNDER THE GENERAL COST STATUTES.*

While decision on Agnew's motion for costs (and the Board's motion to strike or tax those costs) remained pending Agnew filed another motion for costs and fees. In his second motion Agnew sought, in addition to his costs and expert witness fees, an award of attorney fees, claiming attorney fees were awardable as costs because they were "authorized by statute."[37] The "statute" Agnew invoked as authorizing an award of attorney fees was Revenue and Taxation Code section 7156. The Board argued Agnew's second motion for costs and fees was an invalid and untimely motion for reconsideration. The court denied Agnew's second motion, finding "nothing new."

We need not reach the question whether this motion constituted an improper motion for reconsideration and was thus properly denied on that basis.[38] Even assuming the trial court had jurisdiction to consider this second motion, and further assuming Revenue and Taxation Code section 7156 qualifies as a statute authorizing an award of attorney fees within the meaning of Code of Civil Procedure section 1033.5, we nevertheless find Agnew's reliance on this section misplaced. As already discussed, section 7156 of the Revenue and Taxation Code has certain criteria which must be satisfied before a prevailing taxpayer may be entitled to an award of costs and attorney fees under that section. This includes a showing the Board's litigation position was "not substantially justified."[39] The trial court found, and we agree, Agnew failed to satisfy this condition precedent to qualify for an award of attorney fees and costs under Revenue and Taxation Code section 7156. Accordingly, Agnew is not entitled to invoke this section as authority for an award of fees "authorized by statute" in any event.

---

[37] Code of Civil Procedure section 1033.5, subdivision (a)(10)(B).

[38] Compare *Baldwin v. Home Savings of America* (1997) 59 Cal.App.4th 1192, 1200 [69 Cal.Rptr.2d 592] ("If a trial court has no jurisdiction to reconsider a prior order on the basis of 'different facts' in the absence of a satisfactory explanation for the failure to present them earlier, it cannot have jurisdiction to reconsider on the basis of 'different law' absent the same showing of diligence . . . .") with *Deauville Restaurant, Inc. v. Superior Court* (2001) 90 Cal.App.4th 843, 848–849 [108 Cal.Rptr.2d 863] (the court may consider a renewed motion when based on additional evidence and new circumstances not presented in connection with the first application); *Liberty Mutual Ins. Co. v. Superior Court* (1997) 58 Cal.App.4th 617, 623 [68 Cal.Rptr.2d 219] (an insurer's duty to defend continues only so long as there is a possibility of a duty to indemnify; thus a subsequent motion to adjudicate the issue whether a duty to defend still exists may not be an impermissible motion for reconsideration if it is based on new or different facts and circumstances).

[39] Revenue and Taxation Code section 7156, subdivision (c)(2)(A)(i).

## DISPOSITION

The portion of the judgment denying Agnew an award of costs under Code of Civil Procedure section 1032, subdivision (b) is reversed. The matter is remanded to the trial court to determine an appropriate award of costs to Agnew as the prevailing party in the litigation, as possibly augmented by an award of expert witness fees under Code of Civil Procedure section 998. In all other respects the judgment and orders are affirmed. Agnew is awarded his costs on appeal.

Perluss, P. J., and Woods, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 22, 2006, S140381.